Colleen A. COTÉ, Plaintiff-Appellant,

v.

Peter J. WADEL and Wadel & Bulger, P.C., Defendants-Appellees.

No. 85-2550.

United States Court of Appeals, Seventh Circuit.

Submitted May 6, 1986.
Decided July 21, 1986.

Challoner Morse McBride, McBride Law Office, Sturgeon Bay, Wis., for plaintiff-appellant.

David M. Quale, Prosser, Wiedabach & Quale, S.C., Dorothy H. Dey, Milwaukee, Wis., for defendants-appellees.

Before POSNER and COFFEY, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

Colleen Coté, who lives in Wisconsin, brought a diversity suit against Peter Wad-

el, a lawyer in Michigan, and his law firm, Wadel & Bulger, P.C., a professional corporation that is incorporated in Michigan (see Mich.Comp.L. § 450.222(b)) and has its principal place of business there. The suit charges that Wadel committed malpractice in representing the plaintiff in a matter in Michigan. The district court dismissed the suit for lack of personal jurisdiction over the defendants and turned down the plaintiff's plea to transfer the case to a federal district court in Michigan under 28 U.S.C. § 1404(a) rather than dismiss it. She cannot file a new suit, because the statute of limitations has run. She appeals, arguing that either there was personal jurisdiction over the defendants or, if not, the district judge should have transferred rather than dismissed the suit.

■ A threshold question, one of first impression in this circuit, is whether for purposes of diversity jurisdiction a professional corporation is to be treated like any other corporation or like a partnership; if the latter, the existence of subject-matter jurisdiction would depend on which states the shareholders of Wadel & Bulger are citizens of, since for diversity purposes a partnership is a citizen of all the states of which its partners are citizens. See, e.g., *Elston Investment, Ltd. v. David Altman Leasing Corp.*, 731 F.2d 436 (7th Cir.1984).

■ A professional corporation is primarily a device for enabling a partnership of professionals to enjoy the tax advantages of a corporation. Realistically it lacks the two defining characteristics of a conventional corporation—legal liability and perpetual existence. The professional relationship is between the individual professional and the client rather than between the corporation and the client. Thus, the professional remains personally liable for malpractice, and his death or resignation severs the corporation relationship with the client. See American Bar Association, Code of Professional Responsibility, EC 6–6, DR 6–102A (1982); see generally Henn & Alexander, Laws of Corporations and Other Business Enterprises § 77 (3d ed. 1983); Oleck, Nonprofit Corpora-

tions, Organizations, and Associations 187–88 (4th ed. 1980). Since, moreover, professional corporations rarely require substantial capital (other than the "human capital" of the professionals themselves), the essential purpose of the corporate form—to enable the raising of substantial capital from risk-averse investors by allowing them to limit their liability to the amount of the investment (see *In re Kaiser*, 791 F.2d 73, 75 (7th Cir.1986))—is irrelevant, quite apart from the fact that the professional corporation does not shield its shareholders from the largest potential source of personal liability that they face.

■ To give the professional corporation determinative significance for diversity jurisdiction is therefore to attach an unintended consequence to federal tax legislation, and yet we conclude that a professional corporation is a corporation within the meaning of 28 U.S.C. § 1332. Jurisdictional rules should be as simple as possible, so that the time of litigants and judges is not wasted deciding where a case should be brought and so that fully litigated cases are not set at naught (as in our recent case of *Kanzelberger v. Kanzelberger*, 782 F.2d 774 (7th Cir.1986)) because a subtle jurisdictional bar was overlooked until the appeal. We therefore agree with the Second Circuit's conclusion, in the only other case on the question, that a professional corporation is to be treated like other corporations for purposes of determining the presence or absence of diversity jurisdiction. *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 89 (2d Cir.1983). To paraphrase Gertrude Stein, for purposes of diversity jurisdiction a corporation is a corporation is a corporation.

Having satisfied ourselves that the district court had subject-matter jurisdiction we turn to the question of personal jurisdiction. According to Coté's allegations, which for purposes of this appeal we must take as true, she hired Wadel in January 1983 to represent her in a suit for medical malpractice that she had filed pro se in a Michigan state court. Wadel filed an appearance for her in the state court on Feb-

ruary 10, 1983, and on March 1 mailed her a bill for $118.25 for court costs that he had paid on her behalf. She paid him the next month. In July she learned from the defendant's lawyer that her case had been dismissed for lack of prosecution back in April. She called Wadel's office and someone there told her that settlement negotiations were in progress with the defendant's insurer. As she knew that the defendant was not insured, she asked another lawyer to find out what was going on, but no one at Wadel's firm would discuss the case with this other lawyer.

Wisconsin's long-arm statute confers jurisdiction on the Wisconsin courts (and hence, through the operation of Fed.R. Civ.P. 4(e), on the Wisconsin federal courts in diversity suits, see *Afram Export Corp. v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1362 (7th Cir.1985)) over nonresident defendants "in any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." Wis.Stat. § 801.05(3). Unfortunately for Coté there was no act or omission in Wisconsin by Wadel or other persons in his firm. The act or omission of which Coté complains is the failure to prosecute her suit and to cooperate with the lawyer whom she asked to investigate the failure, and these failures occurred in Michigan. She had (she claims) a valuable property in Michigan consisting of a cause of action against a doctor, and she lost that property, also in Michigan, allegedly through the defendants' negligence there. Neither Wadel nor anyone else in his firm ever set foot in Wisconsin in connection with this matter. The only significant connection between the suit and Wisconsin is that the plaintiff lives there; and you cannot get jurisdiction over a nonresident just by showing that you are a resident and would prefer to sue in your own state's courts. By that reasoning, there would be no limits to personal jurisdiction over nonresidents.

The handful of letters and phone calls that passed between Coté and the Wadel firm is not enough to close the gap.

See *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Young v. Colgate-Palmolive Co.,* 790 F.2d 567, 570 (7th Cir. 1986); *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 597 F.2d 596, 598, 604 (7th Cir.1979); *Madison Consulting Group v. South Carolina,* 752 F.2d 1193, 1203 n. 18 (7th Cir.1985) (dictum). Personal jurisdiction over nonresidents of a state is a quid for a quo that consists of the state's extending protection or other services to the nonresident, a feature lacking here. See, e.g., *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Afram Export Corp. v. Metallurgiki Halyps, S.A., supra,* 772 F.2d at 1362–63. The case for jurisdiction is even weaker than in *Wallace v. Herron,* 778 F.2d 391 (7th Cir.1985).

The last question is whether the district court was justified in refusing to transfer rather than dismiss the case. The transfer statute provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Ordinarily, of course, transfer is sought by the defendant rather than the plaintiff; if the plaintiff had wanted to be in another district (where the suit could have been brought) he would have brought his suit there in the first place. To understand the use of the statute by plaintiffs we must turn for a moment to section 1406(a), which provides that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." In *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962), the Supreme Court held that where the plaintiff had accidentally filed suit in the wrong district and the statute of limitations had since run, the interest of justice required that the district court transfer the suit to the right district rather than dismiss

it. It was irrelevant that the first district court also lacked personal jurisdiction over the defendant. In the present case venue was proper, because the sole plaintiff resides in the Eastern District of Wisconsin, see 28 U.S.C. § 1391(a); and in cases such as this the courts reason quite sensibly as it seems to us that a transfer under section 1404(a) is proper in the same circumstances that it would be if venue had been improper, notwithstanding the small difference in wording between 1404(a) and 1406(a) ("may" versus "shall"). See 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3827, at pp. 264–66 (2d ed. 1986). And under 1404(a) as under 1406(a), the transferring court need not have personal jurisdiction over the defendants. *Andrews v. Heinold Commodities, Inc.*, 771 F.2d 184, 189 n. 5 (7th Cir.1985).

■ Under either section, the district court has broad discretion to grant or deny a motion to transfer the case. See, e.g., *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–221 (7th Cir.1986). For "the interest of justice" is not a definite standard, departure from which an appellate court can readily discern and correct. Cf. *Mosey Mfg. Co. v. NLRB*, 701 F.2d 610, 615 (7th Cir.1983) (en banc); *Noonan v. Cunard S.S. Co.*, 375 F.2d 69, 71 (2d Cir.1967) (Friendly, J.). Although we know from *Goldlawr* that the district court's discretion is not unlimited, we know from *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981), that we can reverse its exercise of that discretion only for a "clear abuse of discretion," implying a very limited scope of appellate review.

■ In effect the district court penalized Coté heavily for filing her suit in the wrong district: she is forever barred from bringing a suit that for all we know has great merit. If her mistake were one easy to commit, the penalty might be so disproportionate to the wrong that it would have to be reversed, as a clear abuse of discretion. But the mistake was elementary. Elementary prudence would have indicated to her lawyer that he must file a protective suit in Michigan because there was only a slight probability of obtaining personal jurisdiction in Wisconsin over the defendants. Compare *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 911, 914 (7th Cir.1985). The proper penalty for obvious mistakes that impose costs on opposing parties and on the judicial system is a heavy one. *Brown v. Grimm*, 624 F.2d 58, 59 (7th Cir.1980) (per curiam), upheld a refusal to transfer a case in circumstances like those of the present case. We adhere to *Brown* and remind plaintiffs and their counsel that they must determine where the plaintiff can get personal jurisdiction over the defendant before, not after, the statute of limitations runs; otherwise they court disaster. If the result in the present case seems harsh, that is because the costs to Colleen Coté are palpable while the benefits are largely invisible. But the benefits are not trivial; litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction.

AFFIRMED.