89 F.3d 838
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Edsel C. PETTIFORD, Plaintiff-Appellant,
v.
T.M. LESHER, et al., Defendants-Appellees.
 No. 94-2155, 94-3902.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 30, 1996.[1]
Decided June 17, 1996.
Rehearing Denied Aug. 8, 1996.
 
 Before POSNER, Chief Judge, and MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Out of the procedural chaos resulting from transfers and retransfers between two district courts in Indiana and from the pro se plaintiff's numerous filings in the district courts and in three appeals filed in this court,[2] we discern the following.
 
 
 2
 In September 1989, Pettiford was arrested and placed in the Marion County, Indiana, jail, where he was soon diagnosed as suffering from delirium tremens (DTs). In December 1989, Pettiford was found incompetent to stand trial and was involuntarily committed to Logansport State Mental Hospital, where he remained until his release on June 12, 1990. During his stay, he was allegedly given psychotropic medications against his will.
 
 
 3
 In a series of complaints filed in both the Northern and Southern Districts of Indiana, Pettiford named as defendants various county jail officials, public defenders, court personnel, judges, prosecutors, the police department, and hospital personnel.[3] The claims include Fourteenth and Eighth Amendment challenges, including allegations for failure to adequately treat the DTs, illegal confinement, and the forced administration of psychotropic drugs.
 
 
 4
 On March 31, 1993, Judge Miller, sitting in the Northern District of Indiana, entered a dismissal order pursuant to Fed.R.Civ.P. 12(b)(6), dismissing: (1) all official-capacity claims as barred by the Eleventh Amendment; (2) the claims against certain defendants as barred by the statute of limitations; (3) the claims against several defendants because there were no allegations against them; and (4) the claims against several other defendants due to the absence of any allegations of personal involvement.
 
 
 5
 On June 13, 1993, Judge Miller also dismissed the claims against defendant Steven Lazinsky based on the running of the statute of limitations.
 
 
 6
 On May 3, 1994, Judge Miller dismissed all remaining defendants on the basis that they were first named in the Northern District of Indiana action in an amended complaint which was filed after the June 12, 1992 statute of limitations deadline. He found there was no constructive notice to these defendants, and no mistaken identity. On November 9, 1994, Judge Miller denied Pettiford's Rule 60(b) motion requesting that the judgment in favor of one defendant, Dr. Strefling, be vacated and his claim reinstated.
 
 
 7
 Pettiford filed a notice of appeal on May 11, 1994 (No. 94-2155) from the May 3, 1994 order; and filed a notice of appeal on November 21, 1994 (No. 94-3902) from the November 9, 1994 order. We grant the motion of the parties to consolidate appeal Nos. 94-2155 and 94-3902.
 
 
 8
 Plaintiff argues that the district court erred in dismissing defendants Christ, Lazinsky, McAtee, Prater, Rice, Schuster, Thraten, Wessler, and John Doe (jail medical director), as barred by the statute of limitations.
 
 
 9
 In considering the timeliness of a § 1983 action, the court must look to the state's statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 278 (1985). In Indiana, there is a two-year personal injury statute of limitations (Ind.Code § 34-1-2-2(1)), but a legal disability is presumed when someone is committed to a mental hospital (Ind.Code § 34-1-67-1(3), (6)), and therefore the limitations period is tolled until two years after the legal disability is removed (Ind.Code § 34-1-2-5).
 
 
 10
 Pettiford was released from the state mental hospital on June 12, 1990, which meant that Pettiford had until June 12, 1992 to file suit.
 
 
 11
 The initial complaint in this appeal (Northern District No. S92-245M) was filed on April 9, 1992, naming only Erickson, Foster, Hipsher, Keller, Lesher, Morgan, and Strefling as defendants. No other defendants were named before the statute of limitations period ran two months later on June 12, 1992.
 
 
 12
 But Pettiford may be able to rely on the "relation back" doctrine to bring in defendants named after the statute of limitations had run. Fed.R.Civ.P. 15(c).
 
 
 13
 An amendment of a pleading relates back to the date of the original pleading when the newly named party has received notice or has become aware of misidentification resulting from a "mistake concerning the identity of the proper party" within 120 days of filing the original complaint. Fed.R.Civ.P. 15(c)(3)); Woods v. Indiana University-Purdue University at Indianapolis, 996 F.2d 880, 885 (7th Cir.1993).
 
 
 14
 A first amended complaint filed on September 2, 1992--three months after the statute of limitations had run--added as defendants Thraten, Christ, Prater, Lazinsky and Schuster.
 
 
 15
 A second amended complaint filed on September 22, 1992, added John Doe, Director of Marion County Medical Jail staff. After much urging from the district court to identify John Doe, on October 26, 1993, a third amended complaint was filed apparently substituting Dr. Frederic Rice as the John Doe defendant. It also added Chief Deputy Joseph McAtee, and Lieutenant Wessler. This was more than three months after the limitations period had run.
 
 
 16
 Given the basic principles of the relation back doctrine, the answer initially seems straightforward: Eight of the defendants were not given notice of the present lawsuit within the statute of limitations period, even if they were named in some other lawsuit pending in some other district court. However, the question is complicated by the erroneous transfers of several of Pettiford's filings between two district courts in Indiana.
 
 
 17
 The crux of Pettiford's argument is that he would have named these defendants sooner than September 1992 if it had not been for the errors made by the district courts in transferring the case back and forth between the Southern District of Indiana and the Northern District of Indiana.
 
 
 18
 There were four district court actions filed--two in the Southern District and two in the Northern District. All of the actions involve some or all of the defendants we will refer to as the "jail defendants" and the "hospital defendants," plus a few "other defendants." All of the actions involve the period from September 1989 (when he was arrested) to June 12, 1990 (when he was released from the mental hospital and returned to the County jail). In summary fashion, we explain the critical sequence of filings:
 
 
 19
 On May 13, 1991, plaintiff filed a complaint in the Northern District (S 91-229S) [we will call it case # 1], naming hospital, jail, and other defendants. Shortly thereafter, the Northern District (Judge Sharp) transferred the entire case to the Southern District, the location, he believed, of all the evidence and defendants.
 
 
 20
 The Southern District docketed the case as No. IP 91-570C [case # 2], granted IFP status, and proceeded with the case. On February 22, 1992, however, the Southern District (Judge McKinney) entered an order informing plaintiff that the hospital defendants should be sued in the Northern District, since Logansport State Mental Hospital is in Cass County, which falls within the Northern District. As to the jail and other defendants, the Southern District's Case No. IP 91-570C [case # 2] would continue.
 
 
 21
 On March 13, 1992, Pettiford returned to the Northern District of Indiana, using its Case No. 91-229S (case # 1), and filed a complaint against only the hospital defendants. The Northern District promptly mailed the document to the Southern District.
 
 
 22
 The Southern District received that new complaint, but instead of filing it in the pending case # 2 (IP 91-570C), the Southern District opened a new case, assigning it Case No. IP 92-353C [case # 3]. At this point, then, there was nothing pending in the Northern District since it had twice sent case # 1 (91-229S) to the Southern District. There were two cases (cases # 2 and # 3) pending in the Southern District.
 
 
 23
 The Southern District (Judge Noland) promptly returned the newly-received case # 3 (IP 92-353C) to the Northern District because all hospital defendants and evidence were located in the Northern District. That ended the short life of the Southern District's No. IP 92-353C (case # 3).
 
 
 24
 When the Northern District received the transfer of case # 3, instead of reopening case # 1 (S 91-229S) in which plaintiff had twice tried to name certain defendants (including the hospital defendants), the Northern District assigned a new case number, No. S 92-245M [case # 4], which is the case actually before us in this appeal.
 
 
 25
 Judge Miller was wrong when he stated that No. S 92-245 (Case # 4) "is not, and never has been, cause No. IP 91-570C" (Case # 2), and insisted that only IP 92-353C (case # 3) was related to No. S 92-245M (case # 4). The error is understandable, considering the numerous pro se papers filed by plaintiff, the administrative problems both courts encountered or created in making transfers, and the fact that the captions in all four cases do not name all the defendants, and the allegations in each complaint may not include all of Pettiford's claims. (Resulting, for example, in Judge Miller's granting plaintiff's request that all complaints filed in the Northern District's No. S 92-245M be read in the aggregate.)
 
 
 26
 To summarize: The Northern District sent Case # 1 to the Southern District. The Southern District proceeded with the case (Case # 2) (which is apparently still pending in the Southern District). The Southern District told plaintiff that the hospital defendants would have to be excised from its case # 2, and sued in the Northern District. Plaintiff named these defendants in the Northern District under the case # 1 docket number (91-229S), but the Northern District again sent Case # 1 to the Southern District, where it was given a new number (IP 92-353C, Case # 3), and then soon was transferred back to the Northern District, where it was given another number (S 92-245M, Case # 4, the case before us in this appeal).
 
 
 27
 The question we now face is whether these errors make any difference to the dismissals Judge Miller ordered, particularly those based on statute of limitations grounds. Judge Miller dismissed the claims against the following defendants as barred by the statute of limitations: Louis Christ (Logansport Hospital), John Doe (jail medical director), Steven Lazinsky (public defender), Chief Deputy Joseph McAtee (police), Detective mark Prater (homicide detective), Dr. John Rice (jail), Dr. Dwight N. Schuster (Logansport Hospital), Barbara Thraten (prosecutor), and Lt. John Wessler (police).[4] We have closely examined all documents before us, and have tried to identify information as to the first time each of these defendants was named in any of the four lawsuits.[5]
 
 
 28
 Many of these defendants are located in the Southern District of Indiana, and at one time or another, plaintiff has tried to add some if not all of the Logansport employees to the action in the Southern District of Indiana. Without the Southern District's record before us, it is impossible to determine which (if any) of these defendants received constructive notice of the suit before the statute of limitations ran.
 
 
 29
 For example, it would appear that Wessler was served in both a Southern District case (IP 91-570C, case # 2), and a Northern District case (S 92-245M, case # 4). And McAtee was certainly mentioned in pleadings in both the Southern District and the Northern District proceedings. Other defendants, however, like Prater and Lazinsky, appear to be named in the original complaint filed on May 13, 1991, in the Northern District (S 91-229S, case # 1), which was transferred to the Southern District (where it became case # 2, IP 91-570C), but were not named again until September 2, 1994 in S 92-245M (case # 4). While Prater was served in case # 4, it does not readily appear from the few IP 91-570C documents before us that he was ever served in the Southern District action. Similar problems arise with each defendant.
 
 
 30
 Intracircuit transfers (like intradivisional transfers[6]) are usually only mentioned in regard to the absence of problems. Various problems arise in transfers under §§ 1404(a) and 1406(a), but most of them have no applicability when the transfer is intracircuit, particularly where it is also an intrastate transfer. For example, in the case of an intracircuit transfer adopting the same state's statute of limitations, there will be no new statute of limitations to apply as a result of the transfer, and the court need not concern itself with the question of whether the law of the transferor or transferee district applies. More generally, post-transfer choice of law is rarely if ever a problem in intracircuit transfers. See, e.g., Darchuk v. Kellwood Co., 715 F.Supp. 1438, 1440 (E.D.Ark.1988) ("the transfer to another court in the same circuit will not involve a conflict of laws situation"). Cf. Ferens v. John Deere Co., 494 U.S. 516, 530 (1990) ("foresight and judicial economy now seem to favor the simple rule that the law does not change following a transfer of venue under § 1404(a)"); see also, Robert A. Ragazzo, "Transfer and Choice of Federal Law: The Appellate Model," 93 Mich.L.Rev. 703 (1995).
 
 
 31
 Also, the question of which court of appeals has appellate jurisdiction is not an issue. Great Northern Railway Co. v. Hyde, 238 F.2d 852, 855 (8th Cir.1957) (intracircuit transfer has "no possibility of the appellate jurisdiction of this court being affected in any way"). And a question with the interlocutory reviewability of a transfer order, rarely permitted in an intercircuit case, is even less likely to arise in a intracircuit case. See D'Ippolito v. American Oil Co., 401 F.2d 764 (2d Cir.1968) (per curiam ) ("It is hard to see how any order could be less 'final' than one which merely transfers an action for trial from one district to another in the federal judicial system, whether the transferee district is in the same circuit or a different one"). See generally, Charles Alan Wright, Arthur R. Miller, Edward H. Cooper 15A Federal Practice & Procedure § 3914.12 (1992) (While some courts of appeal refuse to review a transfer order by district courts outside the circuit, such a rule makes little sense: "If review is to be available on final judgment appeal, it should not make any difference whether the order denies transfer, grants transfer to another district in the same circuit, or grants transfer to a district in another circuit"). The intracircuit transfer problems encountered in Pettiford, then, have seldom been explored.
 
 
 32
 The decision to dismiss the Logansport defendants from the Southern District action, and have plaintiff file suit against them in the Northern District, was initially a sound idea.[7] Intracircuit transfers are often good docket management and typically arise under 28 U.S.C. § 1404(a), which permits transfers from one district court to another for the convenience of parties or in the interest of justice, even where the original forum was a proper venue.[8] In intercircuit transfers made under § 1404(a), "considerations of convenience, comity and efficient judicial administration [are] the controlling factors." In re Joint Eastern & Southern Districts Asbestos Litigation, 22 F.3d 755, 762-63 (7th Cir.1994). There is no reason why the same factors would not apply to intracircuit transfers made under § 1404(a).
 
 
 33
 We find, however, that circumstances have changed since the original decision to separate Pettiford's claims made it desirable to transfer the Logansport claims to the Northern District. Cf. Koehring Co. v. Hyde Construction Co., 382 U.S. 362, 365 (1966) ("When such unanticipatable post-transfer events frustrate the original purpose for transfer, a return of the case to the original transferor court does not foul the rule of the case nor place the transferee court in a position of reviewing the decision of its sister court. It, instead, represents a considered decision that the case then is better tried in the original forum for reasons which became known after the original transfer order"); 15 C. Wright, A. Miller, E. Cooper, Federal Practice and Procedure § 3846 at 361-62 (2d ed. 1986) (noting that motions to retransfer a case are appropriate "on a showing of changed circumstance").
 
 
 34
 We hesitate, however, to order the Northern District of Indiana to transfer the case to the Southern District of Indiana. Typically a federal court of appeals does not directly order a transfer from one district court to another. See, e.g., General Foods Corp. v. Carnation Co., 411 F.2d 528, 532 (7th Cir.1969) (in mandamus action, court points to "well-established principle that we are not privileged to substitute our judgment for that of the district court upon the propriety of the transfer of a case. If relief is to be granted to petitioner it must appear from the record that [the district court] has been guilty of a clear abuse of discretion in ordering the transfer"), quoting Chemetron Corp. v. Perry, 295 F.2d 703, 704 (7th Cir.1961). Instead, the appellate court usually remands to let the district court exercise its discretion. It is possible in extraordinary circumstances for the appellate court to order a transfer on remand. Koehring v. Hyde Construction Co., 382 U.S. 362, 364 (1966) (where circumstances require "extraordinary action," federal courts of appeals are not precluded from effecting a transfer by direct order; here, extraordinary circumstances existed because district court in Mississippi previously ignored Fifth Circuit's instructions to transfer case to district court in Oklahoma). In this instance, we prefer to remand the case to the Northern District of Indiana and let that court determine whether a transfer is appropriate. Cf. Robbins v. Pocket Beverage Co., Inc., 779 F.2d 351, 355 (7th Cir.1985) (distinguishing Koehring on basis that it involved prior entry of transfer order by an appellate court). See generally, Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, 15 Fed. Practice & Procedure § 3827 (1995) ("Ordinarily it will be a district court that will order transfer under § 1406(a), but appellate courts have held that they also may order a transfer if they are persuaded that venue is wrong and that a transfer would be in the interest of justice").
 
 
 35
 In exercising its discretion on the question of the transfer, the Northern District of Indiana may consider the fact that a retransfer should cause little problem since the parties never requested the transfers, no argument was heard on the matter, and no objections were made. Also, any convenience to the Logansport defendants is greatly undermined by the fact that Logansport is located in Cass County, which sits on the southern border of the Northern District of Indiana, and is about halfway between South Bend and Indianapolis, where the district courts sit. About half of the defendants named in the pleadings before us are from the Southern District. See 15 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3854 n. 32, 33 (1989) (noting that some courts have held that § 1404(a) was not designed for use in cases where there is only a short distance between the transferor and transferee courts).
 
 
 36
 We think it likely that at this point, consolidation of the cases will result in a substantial saving of judicial time and effort, and permit a final resolution of all claims raised by Pettiford without the danger of inconsistent decisions in regard to the same claims or same defendants. If the claims disposed of by the Northern District are now transferred, the court sitting in the Southern District can consolidate the remaining two actions (S 92-245M and IP 91-570C), and can readily determine which defendants have been served, when, and in what action. The district court may dismiss any defendants it believes appropriate under Rule 15(c). While some of the claims were dismissed for reasons other than statute of limitations, e.g., on the basis of no allegations of personal involvement against some defendants, or no allegations at all against a particular defendant, we would prefer--as with the statute of limitations problems--that all pleadings be presented to the same court before a final determination on these questions is made.
 
 
 37
 If the transfer is made, the Southern District should be mindful of law of the case principles which might arise when it combines the case before us on appeal with the case now pending in the Southern District. See generally 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 4478 (1981 & 1995 supp.). The Southern District judge might, for example, encounter rulings by Judge Miller that conflict with his own prior (or future) rulings in this case, thus triggering law of the case principles. See 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 4478 (1981 & 1995 supp.).
 
 
 38
 Assuming that a transfer occurs, the Southern District does not start the case anew, and thus need not, for example, permit Pettiford to add amendments to the complaint, add new defendants or new claims, or start serving defendants who have never been served. Instead, the transferee district court may properly choose to view the case as it now stands, and weed out various defendants who may be dismissed on grounds such as statute of limitations, failure to allege personal involvement, or failure to include any allegations about the defendant in question.
 
 
 39
 Typically the transferee court should treat prior rulings of the transferor court "in much same way as one district judge treats the rulings of a colleague," Wright, Miller, Cooper, Federal Practice and Procedure § 4478 (1995 supp.) (text accompanying fn. 25.5). But language used to describe consolidated multi district pretrial proceedings offers some insight here: "[T]he underlying purpose of coordination and consolidation may justify special freedom to reconsider matters that otherwise might be the law of the case." Id. (text accompanying fn. 26.5). This is often a matter of "good sense." Champaign-Urbana News Agency, Inc. v. J.L. Cummins News Co., 632 F.2d 680, 683 (7th Cir.1980). After all, law of the case, an "amorphous concept," Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir.1991), is meant to direct a court's discretion, not limit its power. Arizona v. California, 460 U.S. 605, 618 (1983). See also, Steinman, Law of the Case: A Judicial Puzzle in Consolidated and Transferred Cases and in Multidistrict Litigation, 135 U.Penn.L.Rev. 595, 642-44 (1987).
 
 
 40
 These principles are particularly true since neither Judge McKinney in the Southern District, nor Judge Miller in the Northern District, ever had a complete presentation of Pettiford's allegations. Moreover, new discovery or other pre-trial rulings in the consolidated proceedings may require the Southern District to consider anew questions previously decided by Judge McKinney or by Judge Miller, much as one judge might reconsider his own rulings as the pre-trial and trial proceedings progress. The Southern District judge should also keep in mind that the law of the case is difficult to pin down where transfers and retransfers have sent the "litigants into a vicious circle of litigation." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 815-16 (1988).
 
 
 41
 And it is obvious that the transferee court has the power to correct mistakes in any prior rulings in Pettiford's cases, rather than burdening the proceedings with the mistake which we will then have to correct on appeal. See Moses H. Cone Mem. Hospital v. Mercury Construction Corp., 460 U.S. 1, 12 & n. 14 ("every order short of a final decree is subject to reopening at the discretion of the district judge"); Diaz v. Indian Head, Inc., 686 F.2d 558, 562-63 (7th Cir.1982) (a lower court should be free to correct its own mistakes rather than forcing an appellate court into the task by way of appeal and reversal). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." Champaign-Urbana News Agency, Inc. v. J.L. Cummins News Co., 632 F.2d 680, 683 (7th Cir.1980).
 
 
 42
 Accordingly, we remand to the Northern District of Indiana with instructions that it consider whether it would be appropriate to immediately transfer case No. S 92-245M to the Southern District of Indiana, where it can be consolidated with case No. IP 91-570C.
 
 
 43
 We have not considered the possible bearing on this suit of the new Prison Litigation Reform Act, enacted on April 26, 1996, as part of the federal omnibus fiscal year 1996 appropriations measure, Pub.L. No. 104-134, 110 Stat. 1321. That will be a matter for the district court to consider on remand.
 
 
 44
 We affirm only the portion of the district court order dismissing all official-capacity claims as barred by the Eleventh Amendment.
 
 
 45
 AFFIRMED in part and REMANDED.
 
 
 
 [1]
 In No. 94-2155, plaintiff submitted a statement that "there is no need for an oral argument in this pending matter." In No. 94-3902, plaintiff submitted a statement requesting oral argument by telephone, to "save this Honorable Court needless scrutiny of various briefs and numerous unfounded litigation...." Defendant Dr. Rice submitted a response, to which plaintiff replied, and Dr. Rice in turn countered. After an examination of the parties' statements, the briefs, and the record, we have concluded that oral argument is not necessary and therefore the appeals will be submitted on the briefs and the records. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [2]
 In addition to the two appeals we consolidate for disposition, we previously dismissed an appeal as premature. Pettiford v. Lesher, No. 93-2375 (7th Cir. Aug. 4, 1993) (unpublished order)
 
 
 [3]
 The defendants are Paul Annee, Louis Christ, John Doe, E. Erickson, R.N., J. Foster, R.N., P. Hipsher, R.N., Indianapolis Police Department, Helen Keller, R.N., Steven Lazinsky, Dr. Thomas M. Lesher, Marion Co. Prosecutor's Office, Chief Deputy Joseph McAtee, R. Morgan, R.N., Det. Mark Prater, Dr. John Rice, Dr. Dwight W. Schuster, Dr. John F. Strefling, Barbara Thraten, and Lt. John Wessler
 
 
 [4]
 There are a number of defendants to whom Judge Miller never specifically refers: plaintiff tried to add McAtee on October 30, 1992; tried to add Doe, Rice, and Wessler on February 16, 1994 and on April 5, 1994. However, on May 3, 1994, Judge Miller entered an order dismissing all remaining defendants, apparently on the basis that there could be no relation back absent a showing of constructive notice. We shall therefore treat the claims against Doe, McAtee, Rice, and Wessler as having being dismissed on statute of limitations grounds
 
 
 [5]
 The most complete record we have, of course, is in Case # 4 (S 92-245M), the case before us. But our record includes many documents from the other three cases, submitted by plaintiff in his repeated but often muddled attempts to convince Judge Miller that the four cases were related
 
 
 [6]
 Intradivisional transfers were discussed in Hogan v. Ford New Holand, Inc., 1995 WL 360466 (N.D.Ill. June 15, 1995). These transfers often involve considerations such as: (1) at no time does the district lose jurisdiction due to the transfer; (2) the local rules for the transferor and transferee courts located in the same circuit or same state rarely differ; (3) case management is relatively simple and "liquid" compared to intercircuit or interdistrict transfers. We believe that these factors also suggest the benign characteristics of intracircuit transfers
 
 
 [7]
 Transfers are often preferable to dismissals (recall that Judge McKinney dismissed instead of transferring), since dismissals often produce harsh results. Cf. Cote v. Wadel, 796 F.2d 981, 984-85 (7th Cir.1986) (district court did not err in refusing to transfer rather than dismiss the case, although result was harsh; "litigants and the public will benefit substantially in the long run from better compliance with the rules limiting personal jurisdiction")
 
 
 [8]
 "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a)