385 F.3d 1177
 James J. KUNTZ, individually and as husband; Jennifer Kuntz, individually and as wife; Courtney Lian Kuntz, minor child; Leighton Wayne Kuntz, a minor child; Madeleine Ruth Kuntz, a minor child; Margeau Ellen Kuntz, a minor child; Evan James Kuntz, a minor child, Plaintiffs-Appellees,
v.
LAMAR CORPORATION; Lamar Company LLC, a limited liability company d/b/a Lamar Corporation, Defendants, and
Kootenai Electric Cooperative Inc, a corporation d/b/a a cooperative marketing association, Defendant-Appellant.
James J. Kuntz, individually and as husband; Jennifer Kuntz, individually and as wife; Courtney Lian Kuntz, minor child; Leighton Wayne Kuntz, a minor child; Madeleine Ruth Kuntz, a minor child; Margeau Ellen Kuntz, a minor child; Evan James Kuntz, a minor child, Plaintiffs-Appellants,
v.
Lamar Corporation; Kootenai Electric Cooperative Inc, a corporation d/b/a a cooperative marketing association; Lamar Company LLC, a limited liability company d/b/a Lamar Corporation, Defendants-Appellees.
 No. 03-35032.
 No. 03-35065.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 30, 2004.
 Filed September 24, 2004.
 
 COPYRIGHT MATERIAL OMITTED William R. Hickman, Reed McClure, Seattle, WA, for appellant/cross-appellee.
 Howard M. Goodfriend, Edwards, Sieh, Smith & Goodfriend, Seattle, WA, for appellees/cross-appellants.
 Mark A. Barber, Hicks, Casey & Barber, P.C., Marietta, GA, for amicus curiae.
 Appeal from the United States District Court for the Eastern District of Washington, Robert H. Whaley, District Judge, Presiding, D.C. No. CV-00-00415-RHW.
 Before: CANBY, WARDLAW, and GOULD, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 This is an appeal from a judgment entered upon a jury verdict in a personal injury action. Plaintiff James J. Kuntz was severely injured when a metal rod he was removing from a billboard came in contact with an electric transmission line operated by defendant Kootenai Electric Cooperative, Inc. A year before the accident, the Cooperative had moved the transmission line to within eight feet of the billboard. Kuntz sued in district court, asserting jurisdiction based on diversity of citizenship. See 28 U.S.C. 1332(a), (c)(1). The jury awarded substantial damages against the Cooperative and the company that had engaged Kuntz to work on the billboard, Lamar Corporation ("Lamar").
 
 
 2
 The Cooperative appeals, contending that the district court lacked jurisdiction over the action because the Cooperative, although incorporated, should be treated as a partnership or unincorporated association for purposes of diversity of citizenship. Because some of its members are citizens of Washington, as is Kuntz, the Cooperative claims that complete diversity of citizenship is lacking. Alternatively, the Cooperative contends that it enjoys sovereign immunity as a federal instrumentality. Finally, it challenges the denial of its motion for judgment as a matter of law on the question of liability for willful or reckless conduct. Kuntz and his family (hereinafter "Kuntz") cross-appeal, contending that the district court erred in denying them leave to amend the complaint to add a claim for punitive damages. We have jurisdiction under 28 U.S.C. § 1291 and we affirm the judgment of the district court in all respects.
 
 I. BACKGROUND
 
 3
 At the time of the events in issue, Kuntz was an independent contractor in the business of removing and replacing advertising placards on billboards. He contracted with Lamar to change its billboards, including the billboard located on the east side of Highway 95 in Athol, Idaho. This billboard had a vinyl sign that was secured by 14 metal rods.
 
 
 4
 The Cooperative is a cooperative marketing association organized to generate and distribute electric power to its members. The Cooperative is incorporated in the State of Idaho and has its principal place of business there. It owned and operated the high voltage power line, known as the Chilco line, involved in the accident. About one year before the accident, the Cooperative reconstructed the Chilco line, changing from 40-foot poles with one cross-arm and three conductors, to 50-foot poles with two cross-arms and six conductors. After the reconstruction project was completed, the conductor nearest to the billboard was eight feet from the billboard.[1] The Cooperative did not warn Lamar or Kuntz that a conductor was closer to the billboard than before the reconstruction, and undertook no protective measures. The eight-foot distance met the minimum seven-and-one-half-foot clearance requirements of the National Electric Safety Code ("NESC"),[2] although the Cooperative did not actually measure the clearance distance between the line and the billboard until after the accident. The Idaho High Voltage Act, however, places a duty on contractors who intend to work within ten feet of a high voltage line to notify the utility so that protective measures can be taken. IDAHO CODE §§ 55-2401 — 55-2405.[3] Kuntz's contractor, Lamar, did not give such notice to the Cooperative.
 
 
 5
 Unless danger against contact with high voltage overhead lines has been effectively guarded against as provided in section 55-2403 ... a contractor ... shall not ... [p]erform or require any other person to perform any function or activity upon any land, building, highway, waterway or other premises if at any time during the performance of such function or activity it is possible that the contractor ... or any part of any tool or material used by the contractor ... could move or be placed or brought closer to any high voltage overhead line than ... ten (10) feet of clearance.
 
 IDAHO CODE § 55-2402. It further provides:
 
 6
 If any contractor desires to temporarily carry on any function, activity, work or operation in closer proximity to any high voltage overhead line than permitted in this chapter, or in such proximity that the function, activity, work or operation could possibly come within closer proximity than permitted in this chapter, the contractor responsible for performing the work shall promptly notify the public utility owning or operating the high voltage overhead line in writing.
 
 
 7
 IDAHO CODE § 55-2403(1).
 
 
 8
 When Kuntz was changing the sign on the billboard, the ten-foot metal rod that he was reinstalling either touched the high voltage power line or came close enough to cause electricity to arc. The force of the electrical shock knocked Kuntz from the catwalk to the ground 40 feet below. He suffered severe electrical and traumatic injuries.
 
 
 9
 Kuntz filed a personal injury action in the Eastern District of Washington against Lamar and the Cooperative, alleging negligence on the part of both defendants. He also alleged reckless misconduct by both defendants, proof of which avoids the $400,000 cap on non-economic damages imposed by Idaho law. See IDAHO CODE § 6-1603 (Michie 2000).[4] Shortly before trial, Kuntz filed a motion to amend the complaint in order to assert a claim for punitive damages. The district court denied the motion to amend.
 
 
 10
 The case was tried to a jury. At the close of evidence, the Cooperative moved for judgment as a matter of law on the issue of recklessness. The court denied the motion. The jury awarded Kuntz $19,931,504 in damages and apportioned 12% of the fault to Kuntz, 38% to Lamar, and 50% to the Cooperative. The Cooperative renewed its motion for judgment as a matter of law, and the court again denied the motion.
 
 
 11
 The Cooperative appeals,[5] arguing that the district court lacked subject matter jurisdiction because there was no complete diversity of citizenship, and that the district court erred in denying its motion for judgment as a matter of law on the issue of willful or reckless conduct. In its reply brief, the Cooperative adds a contention that it is entitled to sovereign immunity as a federal instrumentality. Kuntz cross-appeals the district court's denial of his motion to amend the pleadings in order to add a prayer for punitive damages.
 
 II. DISCUSSION
 A. Subject Matter Jurisdiction[6]
 
 12
 The Cooperative raises the issue of subject matter jurisdiction for the first time on appeal. For most issues, that would be too late, but challenges to a federal court's subject matter jurisdiction cannot be waived and may be raised at any time. See United States v. Cotton, 535 U.S. 625, 630, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); Miguel v. Country Funding Corp., 309 F.3d 1161, 1163-64(9th Cir.2002). We therefore address the Cooperative's argument.
 
 
 13
 The Cooperative contends that the district court lacked subject matter jurisdiction for three reasons: (1) even though the Cooperative is a corporation, it operates like an unincorporated association and, therefore, the relevant citizenship for diversity purposes is that of its individual members, rather than that of the corporation; (2) even if the Cooperative is treated as a corporation for diversity purposes, its individual members, instead of the corporate entity, are the real parties in interest and their citizenship controls; and (3) the Cooperative, as a rural electric cooperative, is an instrumentality of the United States and this suit is, therefore, barred by sovereign immunity. We address each contention in turn.
 
 1. Complete Diversity
 
 14
 For a case to qualify for federal jurisdiction under 28 U.S.C. § 1332(a), there must be complete diversity of citizenship between the parties opposed in interest. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267, 2 L.Ed. 435 (1806). On the face of this record, the requirement appears to be met. Kuntz is a citizen of Washington. The Cooperative is an Idaho corporation with its principal place of business in Idaho. Lamar is a Louisiana corporation with its principal place of business in that state. For the purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).
 
 
 15
 The Cooperative, however, argues that its "non-stock, non-profit, equal voting, membership structure" makes it an unconventional corporation that is more analogous to a partnership or unincorporated association than to a corporation. Therefore, the Cooperative contends that diversity jurisdiction must be determined by the citizenship of its members, rather than by that of the corporate entity pursuant to § 1332(c)(1). Because some of the Cooperative's members are citizens of Washington, the Cooperative asserts that diversity is not complete.
 
 
 16
 Whether, for purposes of diversity jurisdiction, an unconventional corporation is to be treated like any other corporation or like a partnership is a question of first impression in this circuit. The Seventh and Second Circuits, however, have confronted this issue with regard to professional corporations. See Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc., 710 F.2d 87, 89 (2d Cir.1983); Cote v. Wadel, 796 F.2d 981, 983 (7th Cir.1986); Saecker v. Thorie, 234 F.3d 1010, 1012 (7th Cir.2000). A professional corporation "is primarily a device for enabling a partnership of professionals to enjoy the tax advantages of a corporation." Cote, 796 F.2d at 983. Professional corporations differ from traditional business corporations in that they do not exist in perpetuity and do not necessarily shield their shareholders from liability. Despite lacking these two defining characteristics of a conventional corporation, both circuits held that professional corporations are corporations within the meaning of 28 U.S.C. § 1332. See Saxe, Bacon & Bolan, 710 F.2d at 89; Cote, 796 F.2d at 983. In holding that professional corporations should "be treated like other corporations for purposes of determining the presence or absence of diversity jurisdiction," Cote focused on the obvious benefits of a bright line rule, stating that "[j]urisdictional rules should be as simple as possible." Cote, 796 F.2d at 983.
 
 
 17
 This bright line rule comports with the decisions of the United States Supreme Court in cases involving situations converse to the present one, where various unincorporated associations sought to be treated as corporations for diversity jurisdiction purposes. In Carden v. Arkoma Assocs., 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), the Court held that, despite the functional similarity between limited partnerships and corporations, a limited partnership's citizenship for diversity purposes can be determined only by reference to all of the entity's members. Id. at 196-97, 110 S.Ct. 1015. The Court stated:
 
 
 18
 [T]he course we take today does not so much disregard the policy of accommodating our diversity jurisdiction to the changing realities of commercial organization, as it honors the more important policy of leaving that to the people's elected representatives.... The 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control. Which of them is entitled to be considered a "citizen" for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at the threshold stage of determining whether a court has jurisdiction. We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision.
 
 
 19
 Id. at 197, 110 S.Ct. 1015. Similarly, in deciding that an unincorporated labor union was not to be treated as a corporation for purposes of diversity jurisdiction, the Court said:
 
 
 20
 Whether unincorporated labor unions ought to be assimilated to the status of corporations for diversity purposes, how such citizenship is to be determined, and what if any related rules ought to apply, are decisions which we believe suited to the legislative and not the judicial branch, regardless of our views as to the intrinsic merits of [the] argument.
 
 
 21
 United Steelworkers of Am. v. R.H. Bouligny, Inc., 382 U.S. 145, 153, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). Thus, the Supreme Court has consistently maintained for purposes of diversity jurisdiction a strict dichotomy between entities incorporated under state law and those enjoying some other status.
 
 
 22
 We agree that "[j]urisdictional rules should be as simple as possible, so that the time of litigants and judges is not wasted deciding where a case should be brought and so that fully litigated cases are not set at naught." Cote, 796 F.2d at 983. We therefore conclude that, for purposes of diversity jurisdiction, the Cooperative is to be treated as a corporation simply because it has been incorporated under Idaho law, regardless of the Cooperative's individual structure, purpose, operations, or name. As Judge Posner put it, paraphrasing Gertrude Stein, "for purposes of diversity jurisdiction, a corporation is a corporation is a corporation." Id. The Cooperative is accordingly a citizen of Idaho, its State of incorporation and principal place of business, and diversity of citizenship was complete in this case. The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a) and (c)(1).
 
 2. Real Party in Interest
 
 23
 The Cooperative argues that the district court lacked subject matter diversity jurisdiction because the members of the Cooperative, and not the corporate entity, were the real parties in interest, and some of those members are citizens of Washington. "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). Corporations suing in diversity, however, have long been deemed to be the real parties in interest. Id. Under Idaho law, a corporation is a person with the ordinary rights of a person, including the power to sue or be sued. IDAHO CODE § 30-1-302; Payette Lakes Protective Ass'n v. Lake Reservoir Co., 68 Idaho 111, 189 P.2d 1009 (1948). An Idaho corporation has legal title to, and manages, its own assets, and controls any litigation in which it is involved. IDAHO CODE § 30-1-302. Furthermore, "[a] member of [an Idaho non-profit] corporation is not ... personally liable for the acts, debts, liabilities or obligations of the corporation." IDAHO CODE § 30-3-39. Because, under Idaho law, the Cooperative can be sued in its corporate form, and its members are not individually liable for any debts or judgments against the corporation, the Cooperative, and not its individual members, is the real party in interest in this controversy. We therefore reject this challenge to diversity jurisdiction.
 
 3. Sovereign Immunity
 
 24
 The Cooperative presents an additional jurisdictional argument for the first time in its reply brief in this court.[7] It contends that sovereign immunity precludes the district court's subject matter jurisdiction. The Cooperative's sovereign immunity argument is novel, and somewhat obscure. The Cooperative argues that rural electrical cooperatives are instrumentalities of the United States and, as such, cannot be sued unless the sovereign immunity of the United States has been expressly waived. The Cooperative does not elaborate further. Because Congress has provided a limited waiver of the sovereign immunity of the United States for certain torts of federal employees, we presume that the Cooperative's ensuing argument, if developed, would be that: (1) it is a "federal agency," under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (2004), because that Act covers claims against a corporation acting primarily as an instrumentality of the United States, see 28 U.S.C. § 2671 (2004), and (2) because Kuntz did not exhaust his administrative remedies and then sue the United States as required by the Act, this action is barred. See 28 U.S.C. §§ 2674, 2675(a). This line of reasoning depends entirely, however, on the Cooperative's establishing that it is an instrumentality of the United States for purposes of a tort claim. Success in that endeavor would mean, of course, that the United States could be sued under the Federal Tort Claims Act for a variety of torts that might be committed by the Cooperative.
 
 
 25
 "There are no sharp criteria for determining whether an entity is a federal agency within the meaning of the[Federal Tort Claims] Act, but the critical factor is the existence of federal government control over the `detailed physical performance' and `day to day operation' of that entity." Lewis v. United States, 680 F.2d 1239, 1240 (9th Cir.1982) (quoting United States v. Orleans, 425 U.S. 807, 814, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976) and Logue v. United States, 412 U.S. 521, 527-28, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973)). The only evidence in the record that the Cooperative identifies in support of its argument that it is a federal instrumentality is that it must comply with the regulations promulgated under the Rural Electrification Act and that it may obtain loans from the Rural Electrification Service. These modest connections do not transform the Cooperative into a federal instrumentality. Neither federal regulation nor federal funding, even extensive or exclusive federal funding, is sufficient to make an entity a federal agency. See Orleans, 425 U.S. at 817-18, 96 S.Ct. 1971; Lewis, 680 F.2d at 1241.
 
 
 26
 In Logue, the Supreme Court ruled that county jail employees who held federal prisoners under contract with the federal government were not federal employees under the FTCA, even though they were performing duties that would otherwise be performed by a federal employee and were contractually obligated to follow federal regulations. See 412 U.S. at 531-32, 93 S.Ct. 2215. With regard to the effect of federal funding on the "instrumentality" analysis, the Supreme Court has said:
 
 
 27
 Federal funding reaches myriad areas of activity of local and state governments and activities in the private sector as well. It is inconceivable that Congress intended to have waiver of sovereign immunity follow congressional largesse and cover countless unidentifiable classes of "beneficiaries." The Federal Government in no sense controls "the detailed physical performance" of all the programs and projects it finances by gifts, grants, contracts, or loans.
 
 
 28
 Orleans, 425 U.S. at 816, 96 S.Ct. 1971.
 
 
 29
 Because tort liability follows agency principles, the key factor is the extent to which the federal government exercises control over the day to day operations of the entity. See Lewis, 680 F.2d at 1240. There is no evidence in the record that indicates that the federal government exercises extensive control over the Cooperative's daily operations. Nor has the Cooperative persuasively argued that remanding this matter to the district court for further development of the record would result in the evidence required to show the necessary level of federal control.
 
 
 30
 Instead, the Cooperative relies on one sentence in a Fifth Circuit case for its sovereign immunity argument: "We agree... that rural electric cooperatives are something more than public utilities; they are instrumentalities of the United States." Alabama Power Co. v. Ala. Elec. Coop., 394 F.2d 672, 677 (5th Cir.1968). The Cooperative maintains that this sentence conclusively establishes that rural electric cooperatives are instrumentalities of the United States for purpose of tort liability. But Alabama Power was not a tort case, and its reasoning is clearly of no assistance to the Cooperative here. Alabama Power involved an antitrust action against a rural electric cooperative, the Rural Electrification Administration ("REA"), and the REA Administrator; the suit sought to enjoin the REA from executing, and the cooperative from using, an REA loan. Id. at 673. The Fifth Circuit held that the REA and the REA Administrator were immune from this type of suit because Congress had not expressly waived the United States' sovereign immunity. The court further held that the borrower of the federal loan was also immune from this type of antitrust action because "[t]he making of loans by the Administrator necessarily includes the existence and ability of borrowers to whom such loans can be made." Id. at 677. The court explained that "[t]o avoid frustrating the intent of Congress, it must follow that in cases where the Administrator is immune from suit under the antitrust laws, the borrower is likewise immune." Id. (emphasis added). It is clear to us that the Fifth Circuit's ruling is rooted in the facts and requirements of the transaction before it, and its reasoning is not applicable to the agency questions of a tort suit.
 
 
 31
 We have recognized that the status of federal instrumentality for one purpose does not mean that the same entity is a federal instrumentality for tort purposes. In Lewis, we held that a Federal Reserve Bank, which had been recognized as a federal instrumentality for purposes of immunity from state taxation, did not qualify as a federal instrumentality under the narrower analysis applicable to tort claims. See 680 F.2d at 1242-43. By the same token, the situational federal antitrust immunity recognized for an electric cooperative in Alabama Power does nothing to make the Cooperative a federal instrumentality for tort purposes. We therefore reject the Cooperative's immunity argument.
 
 
 32
 B. Judgment as a Matter of Law on Issue of Recklessness[8]
 
 
 33
 Kuntz's second amended complaint alleged that the Cooperative's conduct was willful and reckless. Under Idaho law at the time this action was filed, a personal injury plaintiff's non-economic damages were capped at $400,000 unless the cause of action arose out of "willful or reckless misconduct." IDAHO CODE § 6-1603 (Michie 2000). The Idaho Code does not define "willful or reckless misconduct" within the meaning of § 6-1603. See IDAHO CODE § 6-1601. The Idaho courts, however, have interpreted "willful" and "reckless" in connection with several similar statutory provisions, and have determined that it refers to conduct where the actor "intentionally does or fails to do an act, knowing or having a reason to know facts which would lead a reasonable man to realize that his conduct not only creates an unreasonable risk of harm to another, but involves a high degree of probability that such harm would result." Harris v. Idaho, Dep't of Health & Welfare, 123 Idaho 295, 847 P.2d 1156, 1160 (1992) (quoting Jacobsen v. City of Rathdrum, 115 Idaho 266, 766 P.2d 736, 740 (1988)). The Idaho courts have emphasized that the key to the meaning of reckless or willful conduct is knowledge, thus implying an element of foreseeability. Hunter v. Idaho, Dep't of Corrs., Div. of Probation & Parole, 138 Idaho 44, 57 P.3d 755, 760 (2002); Harris, 847 P.2d at 1160. Furthermore, the Idaho courts have rejected "`the specific mechanism of injury' approach to foreseeability in favor of `the general risk of harm' approach." Orthman v. Idaho Power Co., 130 Idaho 597, 944 P.2d 1360, 1364(1997). Therefore, with regard to the willful and reckless nature of the Cooperative's conduct, the relevant question is not whether the Cooperative could have foreseen that anyone would have attempted to change the billboard sign using a metal pole and in violation of the Idaho High Voltage Act, but rather whether moving this high voltage line and maintaining it within eight feet of the billboard involved a high probability that harm would result.
 
 
 34
 We agree with the district court that there was sufficient evidence to create a jury question on the issue of willful or reckless conduct. It is undisputed that an electric utility is held to the highest degree of care. The Cooperative moved its lines closer to the billboard without warning. Expert evidence indicated that a ten-foot clearance provided the highest degree of safety, and that the Cooperative had a policy of observing that standard in other instances. There was also evidence of the Cooperative's prior dealings with other billboard owners whose structures were within ten feet of its lines, including the fact that the Cooperative required those other billboard owners to move their billboards to comply with the Idaho High Voltage Act before it would provide service. The evidence also indicated that the Cooperative's engineers knew that there was a billboard within close proximity of the new lines, that the billboard had a catwalk, and that the billboard was changed periodically.[9] If we view this evidence, as we must, in the light most favorable to Kuntz, the non-moving party, and focus the foreseeability question on the general risk of harm, it is clear that conflicting inferences on the issue of foreseeability may be drawn from these facts. Therefore, the district court properly denied judgment as a matter of law and submitted the issue of reckless or willful conduct to the jury.[10]
 
 
 35
 C. Motion to Amend in Order to Add Punitive Damages Claim[11]
 
 
 36
 Under Idaho law, a party may seek punitive damages only with leave of court. IDAHO CODE § 6-1604(2). The court must allow amendment to the pleadings to state a prayer for punitive damages if "the moving party [establishes] ... a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." Id. At the time in issue, an award of punitive damages was permissible only where the claimant had proven "by a preponderance of the evidence, oppressive, fraudulent, wanton, malicious, or outrageous conduct." IDAHO CODE § 6-1604(1) (Michie 2000).[12] The claimant must show "that the defendant acted in a manner that was an extreme deviation from reasonable standards of conduct, [ ] that the act was performed ... with an understanding of or disregard for its likely consequences[, and] that the defendant acted with an extremely harmful state of mind." Gen. Auto Parts Co. v. Genuine Parts Co., 132 Idaho 849, 979 P.2d 1207, 1210-11 (1999) (internal quotations marks omitted). The district court did not abuse its discretion in denying leave to amend on the ground that Kuntz had not established a reasonable likelihood of proving the requisite "extremely harmful state of mind."
 
 III. CONCLUSION
 
 37
 The Cooperative was properly treated as a corporation for the purpose of diversity jurisdiction because it was incorporated under state law. The unconventional nature of the corporation does not deprive it of its corporate status or its susceptibility to treatment as a corporation under 28 U.S.C. § 1332(c)(1). The Cooperative, and not its members, was the real party in interest. The district court therefore had subject matter jurisdiction under 28 U.S.C. § 1332(a) because there was complete diversity of citizenship. The Cooperative was not a federal instrumentality for purposes of tort liability; it therefore was not immune from suit, and claims against it were not subject to the Federal Tort Claims Act.
 
 
 38
 The district court properly denied the motion for judgment as a matter of law on the issue of recklessness. The court also did not abuse its discretion by denying Kuntz's motion to amend to add a prayer for punitive damages. The judgment of the district court is
 
 
 39
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Another, lower conductor was only seven feet from the billboard, but Kuntz did not come in contact with that part of the line
 
 
 [2]
 The National Electric Safety Code is the industry-accepted safety standard for overhead and underground electric utility and communications utility installations. Compliance with the Code constitutes prima facie evidence of absence of negligence, but does not preclude a finding of actionable negligenceSee Probart v. Idaho Power Co., 74 Idaho 119, 258 P.2d 361, 364 (1953).
 
 
 [3]
 The Idaho High Voltage Act provides, in pertinent part:
 
 
 [4]
 The statutory cap is now set at $250,000See IDAHO CODE § 6-1603 (Michie 2002).
 
 
 [5]
 Lamar satisfied its judgment and is not a party to this appeal
 
 
 [6]
 Subject matter jurisdiction of the district court presents a question of law that we review de novoSee Chang v. United States, 327 F.3d 911, 922 (9th Cir.2003).
 
 
 [7]
 A federal court lacks subject matter jurisdiction over an unconsented suit against the United StatesSee Balser v. Dep't. of Justice, Office of the United States Tr., 327 F.3d 903, 907 (9th Cir.2003), cert. denied, ___ U.S. ___, 124 S.Ct. 2159, 158 L.Ed.2d 729 (2004). Subject matter jurisdiction may be raised at any time. See Cotton, 535 U.S. at 630, 122 S.Ct. 1781.
 
 
 [8]
 We review de novo the district court's denial of the Cooperative's motion for judgment as a matter of law made pursuant to Rule 50 of the Federal Rules of Civil ProcedureSee Horphag Research Ltd. v. Pellegrini, 337 F.3d 1036, 1040 (9th Cir.2003).
 
 
 [9]
 These indications of a particularized danger, and the ability to protect against it, differentiate this case fromProbart, 74 Idaho 119, 258 P.2d 361.
 
 
 [10]
 The National Rural Electric Cooperative Association ("NREC"), here asamicus curiae, argues that the district court's denial of judgment as a matter of law on the issue of recklessness misinterpreted the Idaho High Voltage Act by reading it to require a ten-foot construction clearance zone and to impose a duty of notice on the Cooperative. The statute creates no clearance zone and directs its notice requirement to contractors, not to utility companies. IDAHO CODE § 55-2402. The district court never stated or implied otherwise. The district court correctly instructed the jury on the question of recklessness, and there was no objection to those instructions. The NREC's argument is refuted by the record.
 
 
 [11]
 We review for abuse of discretion the district court's denial of Kuntz's motion to amend the complaintSee Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1086 (9th Cir.2002).
 
 
 [12]
 The standard of proof is now "clear and convincing." IDAHO CODE § 6-1604(1) (Michie 2002)