**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 13 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

IRENE HICKMAN, and the class of
similarly situated persons,

      Plaintiffs - Appellants,

v.

GEM INSURANCE COMPANY, INC., a
Utah corporation, formerly known as Gem
State Mutual of Utah, Inc.,

      Defendant - Appellee

No. 00-4082

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF UTAH**
**(D.C. No. 96-CV-1092-K)**

---

Brian S. King, (Marcie E. Schaap and Nicole T. Durrant of King, Burke & Schaap, P.C.,
Salt Lake City, Utah, with him on the brief), for Plaintiffs-Appellants.

David M. Connors, (Bret F. Randall and Michael T. Hoppe of LeBoeuf, Lamb, Greene &
MacRae, L.L.P., Salt Lake City, Utah and Kevin J. Fife of Olson & Hoggan, Logan,
Utah, with him on the brief), for Defendant-Appellee.

---

Before **EBEL**, Circuit Judge, **McWILLIAMS** Senior Circuit Judge, and **BROWN**,
Senior District Judge[*]

---

[*]The Honorable Wesley E. Brown, United States Senior District Judge for the District
of Kansas, sitting by designation.

**BROWN**, Senior District Judge.

The class action plaintiffs in this case brought their claims under the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§1001 through 1461.[1] They alleged that their medical benefits insurer, defendant Gem Insurance Company, had wrongfully refused to fully pay certain hospital room and board charges. Specifically, plaintiffs alleged that defendant was liable under the provisions of 29 U.S.C. §1132(a)(1)(B) for violating the terms of the insurance policies, and equitable relief was requested under 29 U.S.C. §1132(a)(3) for defendant's failure to follow ERISA's claims

---

[1]   An order entered by the trial court on April 30, 1998, approved this litigation as a class action, finding that "Irene Hickman, and the class of similarly situated persons" were designated as plaintiffs in the action.

procedure and notice requirements.[2] They also alleged that defendant had failed in its fiduciary duties under 29 U.S.C. §1104.[3]

The district court granted summary judgment to defendant, and plaintiffs appeal. For the reasons stated below, we affirm.

## Background Facts

The facts relevant to the insurance plans in question do not appear to be in dispute. Plaintiffs entered into hospital insurance contracts with the defendant. Plaintiffs claimed that Gem "paid only an internally calculated daily rate" which it set for hospital room and board expenses, without disclosing what that rate would be in the policies. Plaintiffs alleged that defendant breached its contracts by limiting reimbursement of hospital room and board rates and by failing to follow industry practices relating to such charges.

---

[2] Section 1132(a)(1)(B) provides in pertinent part that:

(a) Persons empowered to bring a civil action
    A civil action may be brought-
    (1) by a participant or beneficiary-
                          * * *
        (B) to recover benefits due to him under the
        terms of the plan, to enforce his rights under the
        terms of the plan, or to clarify his rights to future
        benefits under the terms of the plan; . . . .

Section 1132(a)(3) provides that an action may be brought to enjoin any act or practice which violates the terms of the plan.

[3] Section 1104 sets out the fiduciary duty of the administrator of a plan to act "solely in the interest of the participants and beneficiaries," with the care and diligence of a "prudent man."

There are ten types of policies at issue here, and the case hinges on the language found in the contract plans which insured the plaintiff class. The district court described this language in the following manner:[4]

> COVERED ELIGIBLE EXPENSES: Unless otherwise negotiated, we will pay the lesser of the billed charges or the Usual and Customary charges as set forth in the Schedule of Benefits for the following necessary medical care, treatment, services and supplies:
>
> HOSPITAL ROOM AND BOARD: Hospital room and board including all customary daily services and nursing charges. The room and board charge shall be limited to an average semi-private room rate.

In the policies, the term "Usual and Customary" is defined as:

> . . . (t)he currently prevailing charge made for a medical service or item <u>by a majority of health care providers of the same discipline [or] type within the same geographical area as determined by the Company.</u> (emphasis supplied)

The policies clearly stated that benefits were not provided for "charges which are in excess of Usual and Customary."

The trial court noted that while "[s]ome policies contain the word 'the' rather than 'an' average semi-private room rate," the parties agreed that the difference was not material to a resolution of the dispute. (f.n. 3, p. 4, Slip Opinion)

---

[4] <u>Fredrickson v. Gem Insurance Co.,</u> Case No. 2:96CV1092K, (D.C. Utah, April 3, 2000)(Addenda A, Appellants' Brief, Slip Opinion of District Court, pp. 4-5)

Plaintiffs claimed that the above language was ambiguous and subject to clarification by evidence of industry practices. Gem contended that the contract terms are clear and unambiguous, and under those terms Gem had the clear right to limit payment of hospital room and board charges to prevailing rates in a geographic area.

The trial court ruled that the contract language was not ambiguous:

> Giving the policy language its common and ordinary meaning as a reasonable person in the position of a plan participant would have understood the words to mean, Gem's policy language is not ambiguous. The phrase "an average semi-private room rate" must be read in conjunction with the language of the "covered eligible expenses" provision, which imposes a limitation that Gem "will pay the lesser of the billed charges or the Usual and Customary charges as set forth in the Schedule of Benefits." "Usual and Customary" is defined as "(t)he currently prevailing charge made for a medical service or item by a majority of health care providers of the same discipline [or] type within the same geographical area as determined by the Company." Thus a reasonable person in the position of a plan participant would understand the words to mean that Gem would pay the lesser of the billed charge or, the prevailing, usual, or average charge made for a semi-private room (as opposed to a private room rate) by a majority of health care providers of the same type within the same geographical area <u>as determined by Gem.</u> (Slip opinion, p. 8).

While plaintiffs claimed that Gem's method of computing an average room and board rate was "irregular" and limited in scope because it surveyed only a "few facilities" and was not a fair representation of "average," the trial court determined that under the terms of the insurance plans, Gem had the discretion to set "average amounts" and that its method of figuring averages was reasonable and fair.

In this appeal, plaintiffs contend that the trial court erred in finding that the contract language was not ambiguous, and that it further erred in approving the discretionary rates set by Gem.

In <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 103 L. Ed. 2d 80, at 95, (1989), the Supreme Court ruled that a denial of benefits under §1132(a)(1)(B) should be reviewed under a <u>de novo</u> standard <u>unless</u> the insurance contract gave the administrator discretionary authority to determine eligibility for such benefits.[5]

The plaintiffs contend that this court should first address their "notice arguments" before construing the language found in defendant's insurance plan.  This question of "notice" is based upon plaintiffs' contention that Gem failed to provide "notice" of its denial of hospital benefits, according to 29 U.S.C. §1022.

Section 1022 provides in pertinent part that:

> (a) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title.  The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. . . .

---

[5]     In the trial court Gem contended that, under the <u>Firestone</u> decision, its plan language gave it discretionary authority to calculate maximum rates, and the standard for any review of the matter would be reviewed only for an abuse of discretion. and not <u>de</u> <u>novo.</u> The district court concluded that the result would be the same under either standard. (Slip Opinion p. 4, f.n. 1)

Under paragraph (b) of §1022, the summary plan description must contain "the plan's requirements respecting eligibility for participation and benefits . . . [and] circumstances which may result in disqualification, ineligibility, or denial or loss of benefits. . . ."

We find that the trial court followed the correct procedure in first resolving the question of ambiguity before proceeding to examine the question of an alleged violation of the notice requirements.   This procedure is appropriate in ERISA cases, where the plan language should be construed first in order to determine whether that language was clear and unambiguous.  See Chiles v. Ceridian Corp., 95 F. 3d 1505, 1515 (10th Cir. 1996).

The court will review plaintiffs' claim as it would any other contract claim by looking to the terms of the plan and other evidence of the parties' intent.  If plan documents are reviewed and found not to be ambiguous, then they may be construed as a matter of law.  Chiles, supra, 95 F. 3d at 1511.  Language is to be given "its common and ordinary meaning as a reasonable person in the position of the [plan] participant. . . would have understood the words to mean." Blair v. Metropolitan Life Ins. Co., 974 F. 2d 1219, 1221 (10th Cir. 1992)(quoting McGee v. Equicor, 953 F. 2d 1192, 1200-1201 (10th Cir. 1992).

"The presence of ambiguity in a contract term must be determined as a matter of law. . . An ambiguous contract term is one 'reasonably susceptible to more than one

interpretation'. . ." Carland v. Metropolitan Life Ins. Co., 935 F. 2d 1114, 1120 (10th Cir. 1991), cert. denied, 502 U.S. 1020 (1991) (Citations omitted).

Plaintiffs contend that certain words and phrases have "specialized meanings" which create ambiguity, depending upon extrinsic matters, beyond the clear language found in the terms of the insurance Plan. For instance, plaintiffs insist that Gem's use of the term "average" semi-private room rate creates ambiguity because hospital billing practices vary. The district court correctly found that the term "average" did not render the contract ambiguous:

> While Plaintiffs have argued that the word "average" is ambiguous because it actually could mean the mode, the median, or the mean, and the parties have spent considerable time on and have provided extensive expert testimony regarding the various meanings of the word "average," and whether and how the word differs in meaning from the words "usual," "customary," "prevailing," etc. and what the average person would interpret "average" to mean, the court finds that there is no material ambiguity created by the use of these various words, particularly when Gem retains the discretion to determine the rate it will pay by use of the phrase "as determined by the company." Simply put, a reasonable person in the position of a plan participant would not be [sic] interpret Gem's policy language to mean something materially different from what it states. In other words, a reasonable plan participant would not be misled by Gem's policy language. There is nothing in the plan that requires Gem to pay a claim simply because most other carriers would pay the claim if it were presented to them. (Slip opinion at 9) (emphasis supplied).

Plaintiffs now allege that Gem's plan was ambiguous because it did not provide a specific definition for the term "average semi-private room rate." This argument was not

presented to the district court, and it will not be considered by this court for the reasons

set out in <u>Tele-Communications, Inc. v. Commissioner of Internal Revenue</u>, 104 F. 3d

1229 (10th Cir. 1997).  In  finding that an appellate court will seldom consider an issue

raised for the first time on appeal, we stated:

> This rule is particularly apt when dealing with an appeal from a grant of summary judgment, because the material facts are not in dispute and the trial judge considers only opposing legal theories. . . .  Propounding new arguments on appeal in an attempt to prompt us to reverse the trial court undermines important judicial values.  In order to preserve the integrity of the appellate structure, we should not be considered a "second-shot" forum, a forum where secondary, back-up theories may be mounted for the first time. . . . (104 F. 3d at 1232-1233, citations omitted).

Plaintiffs also claim that the phrase "as set forth in the schedule of benefits" makes

the Gem plan ambiguous and subject to misinterpretation.  Again, we find that the district

court properly rejected this argument by examining that phrase in the context of a

reasonable person's interpretation of that language:

> . . . the fact that the policy states that Gem will pay the lesser of the billed charges or the Usual land Customary charges <u>as set forth in the Schedule of Benefits</u> does not introduce ambiguity.  The Schedule of Benefits merely lists such items as the lifetime maximum benefit, the deductible, the percentage paid by the insurer, etc.  Thus, a reasonable person in the position of a plan participant would interpret the language to mean that Gem will pay the lesser of either the billed charges or the Usual and Customary charges subject to or as stated in the schedule of benefits, <u>e.g.</u> Gem would pay the 70% of the Usual and Customary charge after the deductible was paid, with a lifetime maximum of a certain

amount and an out-of-pocket annual maximum of a certain amount. (Slip Opinion at 9-10).

Gem's definition of "usual and customary" clearly gave notice that limitations would be "as determined by the Company." See Chambers v. Family Health Plan Corp., 100 F. 3d 818, 825 (10th Cir. 1996), where the insurance plan excluded medical procedures "which in the judgment" of the insurer were experimental. See also, Clapp v. Citibank, N.A. Disability Plan (501), 262 F. 3d 820 (8th Cir. 2001), where the insurance plan provided that the existence of a "disability" was to be determined by the claims administrator. The court ruled that the "as determined by" provision was explicit "discretion-granting language." (262 F. 3d at 827).

We next turn to the question of whether Gem's method of calculating the average room and board rate limitation was fair and reasonable.

We find that Gem did not abuse its discretion in applying its plan language to plaintiffs' hospital room and board expenses. Clearly the defendant had discretion to determine the limits of reimbursement. As noted in the Firestone case, our review is limited to determining whether Gem's interpretation was reasonable and made in good faith. McGraw v. Prudential Ins. Co. of America, 137 F. 3d 1253, 1259, (10th Cir. 1998)

The district court found that Gem's procedures in determining the limits of hospital room and board payments were reasonable and appropriate. This finding was based upon uncontradicted evidence presented by Gem's accounting expert, Gil Miller. Gem based its maximum payments of hospital room and board charges on a market-based average of

general hospitals in Utah through surveys conducted in 1991 and 1994. In the earlier survey, defendant established the limitation for Utah at $330 per day, effective January, 1991.[6]

After a 1994 survey, Gem dropped hospitals which charged below market rates and determined that the average semi-private room rate in Utah was approximately $336 per day, while in the most heavily populated region the rate was $385 per day. Following this investigation, Gem raised its usual and customary room and board limitation to $400 per day. The $400 figure was greater than or equal to 90% of the rates quoted by Utah based hospitals in 1994, also in line with rates prevailing in Colorado, Arizona, and Texas. [7]

It appears that in 1997 Gem decided to discontinue its practice of limiting payment of hospital room and board charges. From this evidence, plaintiffs claim that this decision establishes an abuse of discretion in the way Gem had previously applied a limitation.[8] Such evidence is not admissible to establish liability because it is evidence of

_____

[6] At that time the "average daily semi-private room and board charge for hospitals within the State of Utah was from $303 and $305 per day.

[7] In setting rates in 1994 for hospitals located in Colorado, Arizona, and Texas, Gem set a "usual and customary" room and board limitation of $440, $460 and $500, respectively.

[8] It appears that this change of policy was made upon the advice of counsel after this class action was filed.

a subsequent remedial measure under Rule 407 of the Federal Rules of Evidence.[9] Furthermore, such evidence is without relevance to the issue of abuse of discretion.

In light of this uncontradicted evidence, we find that the district court correctly concluded that "there is nothing unreasonable about the way in which Gem calculated its own internal average or the maximum amounts that Gem would pay. . . while Gem ideally should have included rates from specialty hospitals and updated its maximum rates on a more frequent basis, the fact that Gem retained discretion to determine the maximum rate renders these preferences moot". .(Slip opinion, at p. 12).

In this appeal, plaintiffs reiterate their contention that Gem acted unreasonably in applying its usual and customary limitation because its actions violated the provisions of 29 U.S.C. §§1022, 1104, and 1133, and by significantly deviating from "industry standards" in computing room and board reimbursement in breach of defendant's fiduciary duties. They further allege that Gem violated §1133 of ERISA because it did not specify the reason for the partial denial of reimbursement for room and board charges.

29 U.S.C. §1133 sets out claims procedures in this manner:

In accordance with regulations of the Secretary, every employee benefit plan shall-

_____

[9] Rule 407 provides in pertinent part that:

When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, . . .

-12-

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Under the regulations applicable to this section, the denial notice must contain:

(1) The specific reason or reasons for the denial; (2) specific reference to the pertinent plan provisions on which the denial is based; (3) a description of any additional material or information necessary for claimant to perfect the claim and an explanation of why such information is necessary; and (4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review. [29 C.F.R. §2560.503-1(f).

Substantial compliance with the requirements of §1133 is sufficient. <u>Sage Automation, Inc., Pension Plan and Trust</u>, 845 F. 2d 885, 893, 895 (10th Cir. 1988).

The district court found that any deficiency with regard to §1133 was moot since plaintiffs had failed to establish that Gem had improperly computed reimbursement rates:

While it may be true that Gem has failed to comply with at least some of the notice requirements under section 1133, the court does not reach this issue. Even if Gem has violated Section 1133, a deficient denial notice will not necessarily entitle a claimant to benefits. A substantive remedy is appropriate only where the defect in the denial notice causes a substantive violation or worked a substantive harm. . . In other words, if after judicial review, it appears the administrator or fiduciary was correct in its decision, the court will uphold that decision even in light of a violation of Section 1133. . . .

-13-

> Consequently, no substantive remedy is available, and all equitable remedies that might be available. . . . are moot in light of the court's determination that the policy language is not ambiguous. . . . (Slip opinion, pp. 15-16)(citations omitted)

In this appeal, plaintiffs also claim that Gem failed to comply with the provisions of 29 U.S.C. §1022 which involves the requirement that a "Summary Plan Description" (SPD) be provided to all participants and details of all of the information that should be included in this plan. In this regard plaintiffs complain that Gem's SPD did not inform plaintiffs that charges for hospital room and board were subject to a "usual and customary" rate limitation.

In the district court, plaintiffs raised the claim that Gem's method of payment violates the provisions of §1022 and Utah state law.[10] While the trial court noted that plaintiffs "have ostensibly relied on these statutes as further evidence that Gem's policy language is ambiguous or that its survey methodology is unsound," it disposed of the issue in this manner:

> While it is possible that Gem has violated the Utah statute, this violation is irrelevant for purposes of these summary judgment motions. Although the court does not rule on the possible violations of these statutes, violations of either statute have no bearing on whether the policy language is ambiguous or whether Gem's survey methodology was reasonable. To the extent that Plaintiffs are moving for summary judgment on these statutory violations, the motion is

---

[10] The provisions of §1022 appear supra, at p. 6.

denied <u>because Plaintiffs have not alleged violations of these statutes in their Complaint.</u>  (Slip opinion, p. 6, f.n.5)(Emphasis supplied).

We agree with the conclusion of the trial court that §1022 has no relevance to the primary issues of whether the policy language is ambiguous, or whether its method of setting room and board limits was reasonable.

Finally, plaintiffs allege that their ERISA claims are subject to a six-year statute of limitations period, the period applicable to a claim for breach of fiduciary duty.  We agree with the conclusion of the trial court that inasmuch as we find that Gem's insurance plan was not ambiguous and that Gem's calculation of room and board rate limits was a reasonable one, the question of the statute of limitations is moot.

We AFFIRM the district court's grant of summary judgment to the defendant.