# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-2384

CAROL PASTOR, on behalf of herself
    and all others similarly situated,

*Plaintiff-Appellant*,

*v.*

STATE FARM MUTUAL AUTOMOBILE
    INSURANCE COMPANY,

*Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 1459—**Suzanne B. Conlon**, *Judge*.

_____

ARGUED NOVEMBER 30, 2006—DECIDED MAY 23, 2007

_____

Before POSNER, KANNE, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. The district court in this class-action suit denied class certification, and we exercised our discretion under Fed. R. Civ. P. 23(f) to decline to accept an appeal from that denial. But then the defendant made and the plaintiff accepted a modest offer of judgment (Fed. R. Civ. P. 68), which terminated the case and so enabled the plaintiff to appeal as a matter of right in order to challenge the denial of class certification, be-

cause her acceptance of the offer did not resolve the dispute between the unnamed class members and the defendant and so did not render the case moot. *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 332-33, 336-37 (1980); *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999).

Eleven years ago, the windshield of Carol Pastor's car was damaged in an accident. She had the windshield repaired, which took about an hour (perhaps even less—her recollection is spotty) and filed a claim with her auto insurer, State Farm. State Farm paid her repair bill but did not give her an additional $10 that she claims she was owed by virtue of a clause in the insurance policy that obliges State Farm to "pay you $10 per day if you do not rent a car while your car is not usable." (If the insured does rent a car while her own car is unusable, State Farm pays a portion of the rental charge.) The period of entitlement is to begin, "if your car can run, when you leave it at the shop for agreed repairs" and to end when the car has been repaired; if as a result of the accident the car cannot run, the period starts with the accident. The plaintiff did not rent a car while her car was being repaired—that would have been absurd, considering how brief the period was. But neither did she ask State Farm for the additional $10 to which she now claims to be entitled. She contends that the company had a contractual duty to notify her that she was entitled to the money, though there is nothing in the policy to suggest that upon receipt of a claim seeking reimbursement of one cost (the cost of repairing the windshield) the insurer must determine and inform the insured of any additional entitlement that the policy might confer on her, just in case its customers don't bother to read their insurance policies when they file claims under them.

Pastor filed this suit (a diversity suit governed by Illinois law) shortly before the expiration of the 10-year statute of limitations applicable to a suit in Illinois on a written contract. She seeks to represent a class consisting of all State Farm insureds who during the limitations period received payments for claims for damage to their vehicles, did not rent a car, yet did not receive any payment pursuant to the $10 a day clause. Although the class members' claims are small, the Class Action Fairness Act authorizes the aggregation of class members' claims to satisfy the minimum amount in controversy required in a diversity suit, which in the case of a suit governed by the Act is $5 million. 28 U.S.C. § 1332(d)(6).

The district court thought the case unmanageable as a class action, since the contractual entitlement of each member of the class would depend on whether and how long the car was out of service (without the owner's renting a replacement vehicle) because it was being repaired, and on whether the member notified State Farm that the car was out of service (and for how long) and that he hadn't rented a car and was therefore entitled to $10 a day for $x$ days. The plaintiff acknowledges that a determination that the car was out of service, etc., would have to be made for each class member, but argues that the insureds at least have no duty to notify the company of the $10 a day claim. In so arguing she relies on internal documents of State Farm that instruct its employees to explain to its insureds their options, including the $10 reimbursement for each day that an insured whose car is unusable does not rent a replacement. Being internal to State Farm, these documents did not communicate to the insureds an offer that upon acceptance would have contractually entitled them not to read their policies. Even if the documents did

create so improbable a duty, the insured would have to inform State Farm, or State Farm have to be informed through some other route, that the insured's car was out of service; and whether it was informed would be a separate issue with respect to every class member.

But at least, Pastor adds, it would be feasible to make a class-wide determination of whether, as she contends and State Farm denies, a "day" in the clause means any part of a day, however small, in which the car is unusable, or whether it means 24 hours. She relies for her interpretation of "day" on a subsequent version of the clause in which State Farm made explicit that "day" means 24 hours. But whether it would be feasible to resolve such an issue on a class-wide basis, which is to say whether the relevant interpretive principles are uniform across the states whose laws would govern the various class members' claims, is academic, because her interpretation of "day" is groundless. The subsequent version of the clause, in which State Farm made explicit that "day" means 24 hours, and which State Farm describes as a clarification, Pastor deems a confession that her interpretation of the original clause is correct. Obviously it is not a confession. And to use at a trial a revision in a contract to argue the meaning of the original version would violate Rule 407 of the Federal Rules of Evidence, the subsequent-repairs rule, by discouraging efforts to clarify contractual obligations, thus perpetuating any confusion caused by unclarified language in the contract. Rule 407 is not limited to "repair" in the literal sense. *Dusenbery v. United States*, 534 U.S. 161, 172-73 (2002); *Lust v. Sealy, Inc.*, 383 F.3d 580, 585 (7th Cir. 2004); *Dennis v. County of Fairfax*, 55 F.3d 151, 154-56 (4th Cir. 1995). It was applied to the meaning of an insurance clause in *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1213-

14 and n. 9 (10th Cir. 2002). And in *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986), a disciplinary proceeding was deemed a "subsequent repair." Pastor wants to use the evidence that State Farm, to avert future liability to persons in the position of the plaintiff, changed the policy, to establish State Farm's "culpable conduct." That is one of the grounds that evidence of subsequent corrective action may *not* be used to establish.

State Farm argues that in any event the relevant interpretive principles are not uniform across states, and in particular that states vary greatly in their willingness to admit extrinsic evidence to contradict the apparent meaning of a written contract; and since the proposed class embraces all 45 jurisdictions (44 states plus the District of Columbia) in which State Farm offered the coverage in question, the district court could not—State Farm argues—determine the meaning of the contract without splitting the class into separate classes. Illinois's choice of law principles, which govern this litigation because Illinois is the state in which the suit was brought, probably would refer to the law of other states to determine the rights of at least some of the class members. Illinois gives greatest weight in its choice of law determinations to the jurisdiction in which the insured risk is located, *Emerson Electric Co. v. Aetna Casualty & Surety Co.*, 743 N.E.2d 629, 639-40 (Ill. App. 2001); *Society of Mount Carmel v. National Ben Franklin Ins. Co.*, 643 N.E.2d 1280, 1286-87 (Ill. App. 1994); *Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1122-23 (7th Cir. 1998) (Illinois law), and in this case it would be where the car became unusable, at least if that was also the state in which the insured usually used the car. *Allen v. State Farm Mutual Automobile Ins. Co.*, 574 N.E.2d 55, 59-61 (Ill. App. 1991). Many states would fit the bill.

This would be a powerful objection to a class-wide determination of the class members' rights were it true that the dispute over the contract's meaning would be resolved differently in different states because of differences in state law. But it is not true. If a contract is clear on its face, extrinsic evidence is admissible only to establish a *latent* ambiguity, which is to say an ambiguity that appears only when the contract is placed in its real-world context. E.g., *Gilmer v. Stone*, 120 U.S. 586, 588-91 (1887); *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542-43 (7th Cir. 2000); *Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 811-12 (6th Cir. 2007); *Connect Communications Corp. v. Southwestern Bell Telephone, L.P.*, 467 F.3d 703, 709-10 (8th Cir. 2006). So in the famous case of *Raffles v. Wichelhaus*, 2 H. & C. 906, 159 Eng. Rep. 375 (Ex. 1864), a suit for breach of a contract to deliver cotton by a ship called the *Peerless*, the contract was clear on its face but became ambiguous when evidence was presented that there were two ships by that name to which the contract might equally well have referred. As far as we know, all states allow extrinsic evidence to "ambiguate" a contract clear as written only if there is a latent ambiguity. State Farm, seemingly ignoring its long-run interests as a frequent defendant in breach of contract suits, argues that "multiple" states permit extrinsic evidence to be considered in *all* suits for breach of contract, basing this heresy on scattered judicial language taken out of context.

The plaintiff manages to fog up the issue by presenting a chart which purports to show that 37 states *never* allow extrinsic evidence in a contract case. But the cases it relies on for *this* heresy merely state the general proposition that unambiguous contracts are to be interpreted as written, without recourse to extrinsic evidence that might

contradict the literal meaning. E.g., *Wright v. State*, 700 N.E. 2d 1153 (Ind. App. 1998); *Kraft v. Mason*, 668 So. 2d 679, 685 (Fla. App. 1996). The latent-ambiguity doctrine is an exception recognized by the same courts that state the general rule. *Simon Property Group, L.P. v. Michigan Sporting Goods Distributors, Inc.*, 837 N.E.2d 1058, 1070-71 (Ind. App. 2005); *RX Solutions, Inc. v. Express Pharmacy Services, Inc.*, 746 So. 2d 475, 476-77 (Fla. App. 1999); *Landis v. Mears*, 329 So. 2d 323, 325-26 (Fla. App. 1976).

The obstacle to class certification in this case lies elsewhere. Questions of contract interpretation are only a small part of the overall dispute. Individual hearings would be necessary to determine whether a class member made a claim for his $10 a day, whether his car was unusable, and if so for how long. The plaintiff argues that whenever a car is damaged, it *must* be unusable, for no matter how short a time. But that is wrong, since some people don't bother to have a damaged car repaired, and many damaged cars are drivable. And if a damaged car can still be driven, a claim under the $10 a day clause requires proof that the car was in a repair shop. Not all damaged cars that are repaired are repaired in repair shops. Damage to windshields—the damage of which Pastor complains—is a type of automobile damage frequently repaired by mobile units, and even if these are "[repair] shop[s]" within the meaning of the insurance policy, a car sitting in the driver's driveway undergoing repair by a mobile repair unit for minor damages would still be drivable; in an emergency the driver could interrupt the mobile repair and whisk off.

The size of the class has not been determined. But it surely consists of many thousands of persons, considering that State Farm is the largest auto insurer in the country, with literally tens of millions of auto insurance cus-

tomers (which makes it reasonably likely that the suit meets the Class Action Fairness Act's requirement of a $5 million minimum amount in controversy), and considering too the length of the period of limitations. The revision of the $10 a day clause will have diminished the size of the class somewhat, but we don't know by how much.

The picture of a federal district judge presiding over thousands of evidentiary hearings each involving a trivial amount of money is not a pretty one. In these circumstances the judge was right to deny class certification, *Isaacs v. Sprint Corp.*, 261 F.3d 679, 681-82 (7th Cir. 2001); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677-78 (7th Cir. 2001), though not because class actions are poorly suited to aggregating small claims. Quite the contrary—if a class member has a large enough stake to be able to litigate on his own, the case for class-action treatment is weakened. *Nagel v. ADM Investor Services, Inc.*, 217 F.3d 436, 443 (7th Cir. 2000). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997), quoted in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). But when a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of class-action treatment. And that is the case here.

Of course this means as a practical matter that no member of the class, except Pastor, will recover under the $10 a day clause in a court of general jurisdiction even if entitled to such relief, because even as augmented by interest and

multiplied by the number of days that the car was in the shop the claim would be too slight to make a lawsuit worth bringing. (A further complication is that the question of prejudgment interest would be answered differently by the different states whose laws govern the claims of the various class members, because the $10 a day entitlement is not liquidated but instead depends on the length of time the insured's car was unusable. See Michael S. Knoll, "A Primer on Prejudgment Interest," 75 *Tex. L. Rev.* 293, 297-98 (1996); Anthony E. Rothschild, Comment, "Prejudgment Interest: Survey and Suggestion," 77 *Nw. U. L. Rev.* 192, 194-95 (1982).) Unlike a class action dominated by issues common to the entire class, there would be no significant economies from consolidating the class members' tiny claims, each requiring its own evidentiary hearing; the expense and burden to the parties and to the judiciary would exceed the value of the claims. This does not mean that the class members are remediless, but they will have to seek their remedies in small-claims courts.

It remains to consider an issue concerning compliance with Seventh Circuit Rule 28(a)(1), which requires the jurisdictional statement in a diversity case to specify both the state (or other jurisdiction) in which a corporate party is incorporated *and* the state in which the party's principal place of business is located. The purpose of the rule is to remind the lawyers who practice in this court that for purposes of the diversity jurisdiction a corporation is a citizen of two states (though they may coincide): the state in which the corporation is incorporated and the state in which its principal place of business is located. State Farm is a corporation, so the appellant's jurisdictional statement was required to specify both states. All the statement said, however, was that State Farm "is a citizen

of Illinois." That is correct, because State Farm is both incorporated in and has its principal place of business in Illinois. But the statement does not comply with the rule. And the corporate status of State Farm is not transparent, since it is a mutual insurance company rather than a conventional business corporation and does not have "corporation" or "inc." in its name, although in fact it is incorporated and all corporations (including business, charitable, and religious corporations) are treated the same for purposes of determining whether the requirements of diversity jurisdiction are satisfied. *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 267 (7th Cir. 2006); *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 740-43 (7th Cir. 2004); *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1182-83 (9th Cir. 2004); *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 89 (2d Cir. 1983). "To paraphrase Gertrude Stein, for purposes of diversity jurisdiction a corporation is a corporation is a corporation." *Coté v. Wadel*, 796 F.2d 981, 983 (7th Cir. 1986). (The jurisdictional statement even failed to mention that State Farm *is* a corporation, though Fed. R. App. P. 28(a)(4)(A) requires the appellant's jurisdictional statement to indicate "the basis for the district court's or agency's subject-matter jurisdiction.")

Circuit Rule 28 further requires (in subsection (b)) that the appellee's jurisdictional statement state whether the appellant's jurisdictional statement is "complete and correct." This is a further check on our court's assuming jurisdiction of a case over which we lack jurisdiction. State Farm, though represented by a major Chicago law firm (McDermott Will & Emery) that should know better, certified mistakenly that the appellant's jurisdictional statement was indeed complete and correct.

We issued an order to show cause why the parties' lawyers should not be sanctioned for violating our circuit rule, and they have responded. The sin in this case is venial, and we will not impose sanctions; the burden of responding to the order was punishment enough. But we note a mistake in State Farm's response to our order. It says that its jurisdictional statement is "complete and correct" because State Farm is in fact a citizen of Illinois (and only Illinois), as the appellant's jurisdictional statement asserted. But State Farm is wrong (again): a jurisdictional statement that violates Circuit Rule 28 is not complete and correct.

Still, the order to show cause is discharged. The judgment of the district court is

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*