**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4405
_____

FRANK REYNOLDS,
                                        Appellant

v.

THE UNIVERSITY OF PENNSYLVANIA; THE SCHOOL OF ENGINEERING &
APPLIED SCIENCE OF THE UNIVERSITY OF PENNSYLVANIA; THE WHARTON
SCHOOL OF THE UNIVERSITY OF PENNSYLVANIA; LYLE UNGAR; ZIV
KATALAN; JOEL ADLER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 06-cv-01237)
District Judge:  Hon. Thomas N. O'Neill, Jr.

Submitted Pursuant to Rule 34.1 on September 19, 2011

Before:  AMBRO, CHAGARES, and ROTH, Circuit Judges.

(Filed: May 25, 2012)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Frank Reynolds appeals the District Court's orders (1) granting a new trial based

on its reversal of its decision to exclude evidence under Federal Rule of Evidence 403 in

the first trial, (2) excluding other evidence in the second trial as subsequent remedial

measures under Federal Rule of Evidence 407 and prohibiting Reynolds's attempt to impeach a witness based on that evidence, (3) granting appellees' (collectively "University of Pennsylvania" or "Penn") motion for judgment as a matter of law following the second trial, and (4) entering sanctions against Reynolds for failure to admit a request for admission. For the reasons that follow, we will affirm the orders of the District Court.

## I.

We write for the parties' benefit and recite only the facts essential to our disposition. Reynolds applied to and enrolled in the Executive Masters in Technology Management ("EMTM") program at the University of Pennsylvania in 2002 and claims that at that time he was told that the EMTM students would be considered graduates and alumni of Wharton, Penn Engineering and the University of Pennsylvania. Supplemental Appendix ("Supp. App.") 1941-61. In Fall 2003, Reynolds claims he was informed that he would be considered a graduate of Penn Engineering only and could not represent himself as a Wharton student or Wharton alumnus upon graduation. Supp. App. 1986-93.

Reynolds filed his complaint against the University of Pennsylvania and several individuals[1] in the Philadelphia County Court of Common Pleas in March 2006 and Penn removed the case to the United States District Court for the Eastern District of Pennsylvania. Reynolds asserted claims for (1) breach of contract, (2) unjust enrichment,

---

[1] Reynolds dismissed the individual defendants by stipulation before the start of the first trial. Appendix ("App.") 3 n.2.

2

(3) negligence, (4) negligent misrepresentation, (5) intentional misrepresentation, (6) common law fraud, (7) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. Ann. § 201-1 et seq., and (8) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), (d).

Another EMTM student, Anurag Harsh, filed a case alleging similar conduct and the cases proceeded together but were never consolidated. App. 3. During discovery, Penn alleges it found evidence that Harsh had modified documents that he relied on for his claim, namely a PowerPoint presentation given by EMTM Admissions Director Joel Adler to prospective students and an email to Harsh from Adler. Reynolds alleged in his complaint that he relied upon the PowerPoint presentation and incorporated Harsh's email exchange with Adler in his complaint as well. App. 124-25,128-29. Harsh filed a motion to dismiss his claims with prejudice, which was granted by the District Court on September 15, 2008. App. 5.

During discovery, Penn requested an admission from Reynolds that the Adobe Acrobat 6.0, Adobe Acrobat Distiller 6.0.1 and Adobe Acrobat PDFMaker 6.0 software that Penn's analysis showed had been used to save the PowerPoint slides that Reynolds alleged he relied on in 2002, were not available to the public until after April 1, 2003. Supp. App. 631-32. Reynolds initially refused to admit the request for admission based on lack of personal knowledge. Supp. App. 635. Penn then sent Reynolds an April 7, 2003 press release from Adobe announcing the upcoming introduction of the Adobe Acrobat 6.0 product line. Supp. App. 638-41. Penn informed Reynolds that if he refused

to admit the release date of the software, it would travel to California to depose an Adobe representative and would seek to recover the costs of the deposition under Federal Rule of Civil Procedure 37(c)(2). Supp. App. 638-39. Penn did take the deposition of an Adobe representative, who stated that Adobe Acrobat 6.0 and related software were not available to the public until May 2003. App. 478-82. Penn read this testimony to the jury at the second trial. See App. 82 n.3.

The day before the start of the first trial, September 28, 2009, Reynolds moved to exclude the exhibits that Penn alleged to be fraudulent and any mention of Harsh and his lawsuit. The District Court granted the motion, over Penn's opposition, although the issue was not fully briefed due to the time constraints of the impending trial. App. 5-6. At the first trial, the jury found in favor of Reynolds on the breach of contract claim and awarded him $435,678. App. 2. On January 27, 2010, however, the District Court granted Penn's motion for a new trial, based on what the District Court determined to be its own erroneous exclusion of the allegedly altered documents. App. 1.

Before the second trial, the District Court granted Penn's motion to exclude as inadmissible under Federal Rule of Evidence 407 as subsequent remedial measures evidence of a November 1, 2003 Town Hall meeting of students and Penn administrators, where administrators explained the place of the EMTM program within the University and then took questions from students about the nature of the program, and a version of Penn's website revised in 2004, in which Penn clarified the benefits it expected to grant EMTM students. App. 20.

4

The jury in the second trial found that Penn had been unjustly enriched and awarded Reynolds $66,000. App. 35. Reynolds moved for a new trial based on the exclusion of the Town Hall meeting and revised website evidence, which the District Court denied. App. 34. Penn moved for judgment as a matter of law on the unjust enrichment claim, which the District Court granted because an express contract governed the relationship between the parties. App. 34. Reynolds timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 as Reynolds's complaint included claims of RICO violations under 18 U.S.C. § 1962(c) and (d). On September 1, 2009, Reynolds voluntarily stipulated to the dismissal of his RICO claim and then moved to remand the case to state court. The District Court denied the motion and retained jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. App. 48. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

### A.

Reynolds contends the District Court erred when it ordered a new trial based on its evidentiary ruling under Federal Rule of Evidence 403 to exclude all references to the Harsh case and the allegedly altered documents in the first trial. We review the District Court's decision to grant a new trial for an abuse of discretion. Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992). We note that "[p]articular deference is appropriate . . . because the decision to grant a new trial rested on an evidentiary ruling that was itself entrusted to the trial court's discretion. Indeed, a trial judge's decision to

5

admit or exclude evidence under Federal Rule of Evidence 403 may not be reversed unless it is 'arbitrary and irrational.'" Bhaya v. Westinghouse Elec. Corp., 922 F.2d 184, 187 (3d Cir. 1990) (footnote omitted). Applying this standard of review, we will affirm the District Court's decision to grant a second trial in this case.

During discovery, Penn uncovered evidence that it contends shows that the versions of the documents incorporated into Reynolds's complaint had been altered. Penn argues the PowerPoint presentation that Reynolds alleges he relied on in 2002, when deciding whether to enroll in the EMTM program, contains a Wharton logo that was not available until March 2003. Penn also argues that the PowerPoint presentation was saved using Adobe software that was not available until 2003. Finally, Penn alleges that its expert found several versions of the email from Adler to Harsh on Reynolds's computer that were altered from the version on Adler's computer.

Federal Rule of Evidence 403 allows the court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The District Court found that the probative value of this evidence was high because the evidence bore directly on Reynolds's credibility. Reynolds's complaint incorporated the allegedly altered documents, the PowerPoint presentation, and an email from Adler to Harsh. App. 124-25, 128-31. At his February 6, 2007 deposition, Reynolds identified specific elements of the PowerPoint presentation on which he relied. Supp. App. 738-46. The District Court found that Reynolds's case depended on his recollection of the agreement he had with Penn and the

6

alleged breach of that agreement. The District Court further found that the probative value of the excluded evidence was not substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; see also Harbor Ins. Co. v. Schnabel Foundation Co., 946 F.2d 930, 935 (D.C. Cir. 1991) ("Particularly where a party is seeking to impeach a witness whose credibility could have an important influence on the outcome of the trial, the district court should be cautious in limiting cross-examination.").

Thus, "[h]aving identified this incorrect evidentiary ruling, the trial judge was required . . . to grant a new trial unless it was 'highly probable' that the error did not affect any 'substantial rights.'" Bhaya, 922 F.2d at 189 (citation omitted). The District Court did not abuse its discretion when it determined that Penn's substantial rights were affected when it was not allowed to probe Reynolds's credibility on documents that he relied on initially to support his claim.

Because the District Court did not abuse its discretion in granting a new trial based on its conclusion that the limits it placed on Penn's impeachment of Reynolds by excluding all references to the Harsh case and the allegedly altered documents were in error and it was not highly probable that the error did not affect Penn's substantial rights, we will affirm its ruling.

B.

1.

Reynolds contends the District Court erred when it excluded under Federal Rule of Evidence 407 as subsequent remedial measures evidence of the November 1, 2003 Town Hall meeting and alterations to Penn's website in 2004. We review denial of a motion for

7

new trial based on admissibility of evidence for abuse of discretion. Shade v. Great Lakes Dredge & Dock Co., 154 F.3d 143, 151-52 (3d Cir. 1998). "However, where 'the district court's decision rests on the application of legal precepts, we exercise plenary review.'" Id. at 152 (quoting Failla v. City of Passaic, 146 F.3d 149, 153 (3d Cir. 1998)).

Federal Rule of Evidence 407 provides:

When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
- negligence;
- culpable conduct;
- a defect in a product or its design; or
- a need for a warning or instruction.

But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

The District Court relied on the "plain text" of Rule 407, noting that the Rule used "culpable conduct" rather than a more narrow phrase such as "tortious conduct," and therefore the Rule applied in contract cases in addition to tort cases. App. 55. Black's Law Dictionary (9th ed. 2009) defines culpable as "guilty; blameworthy" and as "[i]nvolving the breach of a duty."

The Court of Appeals for the Seventh Circuit has applied Rule 407 in a contract case. Pastor v. State Farm Mutual Automobile Insurance Company,487 F.3d 1042 (7th Cir. 2007). In Pastor, the plaintiff sought to represent a class of individuals insured by State Farm who received payment for damage to their cars, but not under the clause in the policy that provided that State Farm would pay $10 per day if the insured did not rent a car while their car was not usable. Id. at 1044. The plaintiff sought to introduce evidence

8

that in subsequent versions of its policy State Farm explicitly stated that "day" meant 24 hours.  Id. at 1045.  The plaintiff argued that the change in the policy was a "confession" that her interpretation of the clause in the prior policy — that "day" meant any part of a day — was correct.  Id.  The court in Pastor held that "to use at trial a revision in a contract to argue the meaning of the original version would violate Rule 407 . . . by discouraging efforts to clarify contractual obligations, thus perpetuating any confusion caused by unclarified language in the contract."  Id.  It held that "Rule 407 is not limited to 'repair' in the literal sense."  Id.[2]  "[The plaintiff] wants to use the evidence that State Farm, to avert future liability to persons in the position of the plaintiff, changed the policy, to establish State Farm's 'culpable conduct.'  That is one of the grounds that evidence of subsequent corrective action may *not* be used to establish."  Id.  In addition, the Court of Appeals for the Tenth Circuit in Hickman v. Gem Insurance Company, 299

---

[2] Changes in contract language may be considered subsequent remedial measures or "repairs," pursuant to Rule 407.  Two cases from our sister courts of appeals held that changes made to subsequent contracts that contained allegedly unlawful provisions could not be introduced, as they were subsequent remedial measures.  R.M. Perlman, Inc. v. New York Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local 89-22-1, 33 F.3d 145, 156 (2d Cir. 1994) (holding that letter with suggested revisions to standard form contract was a subsequent remedial measure and could not be used to show Union's intent to apply the contract to the employer-plaintiff in an unlawful way, constituting an unfair labor practice); Noble v. McClatchy Newspapers, 533 F.2d 1081, 1090 (9th Cir. 1975) ("It was not error to exclude evidence that McClatchy deleted allegedly anticompetitive provisions in the distributorship contracts after plaintiffs' termination. Plaintiffs argue that 'an inference of guilt or wrongdoing may be drawn' from such evidence; but it is well settled that evidence of subsequent remedial measures is not admissible to prove culpability of prior conduct.").  Although in these cases the evidence was being introduced to prove an unfair labor practice and an antitrust violation, respectively, rather than a breach of contract, these cases support the argument that changes to contract language may be considered subsequent repairs and may be barred by Rule 407 when introduced for an impermissible purpose.

9

F.3d 1208 (10th Cir. 2002), similarly held that Rule 407 barred the admission of evidence of subsequent changes to an insurance contract. Id. at 1214 (holding that medical benefits insurer's change in reimbursement policy was not admissible to establish liability for abusing its discretion under the federal pension statute in applying prior plan's language). Likewise in our case, admitting the Town Hall meeting and website revisions would discourage those in Penn's situation from clarifying contractual obligations and thus would perpetuate confusion.[3]

In this case, the changes to the website in January 2004 were similar to the changes in the subsequent contracts in Pastor and Hickman. The website changes appear on the Frequently Asked Questions section of the EMTM admissions website. App. 1469, 1473. The January 2004 website stated:

> As a co-sponsor of the program, the Wharton School has also invited graduates of EMTM to become, in effect, 'honorary' members of the Wharton alumni network and online community. EMTM graduates can obtain a lifelong e-mail forwarding address, register to be included in the Wharton alumni directory, and take part in Wharton alumni clubs and events. (This association is extended as a privilege, and is not an official alumni status. For all purposes of identification and records, including

---

[3] The Court of Appeals for the Eighth Circuit held that Rule 407 did not bar a jury instruction permitting evidence of a later improved design as proof of a defective product under the defendant's express warranty in a breach of warranty cause of action because "plaintiffs were not required to establish that [the defendant] was negligent or engaged in culpable conduct in order to establish a breach of [the defendant's] warranty." R.W. Murray, Co. v. Shatterproof Glass Corp., 758 F.2d 266, 274 (8th Cir. 1985). The Court relied on its precedents that held that Rule 407 did not apply in products liability cases because those cases did not require proof of negligence or culpable conduct. Id. However, Rule 407 was amended in 1997 to reflect the majority view that it is to be applied in products liability cases. Fed. R. Evid. 407 advisory comm. note (1997); see also Kelly v. Crown Equip. Co., 970 F.2d 1273, 1275 (3d Cir. 1992) ("This court has consistently held that Rule 407 applies to strict liability suits even though the language in the rule refers to inadmissibility to prove negligent or culpable conduct.").

10

transcripts, EMTM students and alumni are affiliated with Penn Engineering.)

App. 1473.  In November 2003, however, the website stated:

> As EMTM alumni, you have the full advantages of being Penn Engineering alumni, Wharton alumni and Penn alumni.  Perhaps the most significant benefit is the opportunity to join the alumni network; and the most important tools to enable that network are the alumni directories.  There are actually 2 alumni directories.  The Penn alumni directory is available to all graduates of the University.  The only school that provides a distinct alumni network in Wharton, in which you are included as an EMTM graduate . . . In addition to alumni directories, you have access to 2 separate lifelong e-mail addresses, an unchanging e-mail address that you can use throughout your lifetime  .  .  .  The standard address formats are firstname.lastname.class@wharton.upenn.edu and firstname.lastname@aolumni.upenn.edu.  The 'class' used in your Wharton address is WTyy; WT stands for Wharton Technology and yy is the years of your graduation.

Supp. App. 1003.  The changes to the website are similar to the changes in later insurance contracts that the Court of Appeals for the Seventh Circuit barred in Pastor as subsequent remedial measures, because they will prevent future confusion.  487 F.3d at 1045.

The District Court did not abuse its discretion when it determined that if the revisions to the website and the Town Hall meeting had occurred before Reynolds enrolled, they would have reduced the likelihood of any possible confusion about what benefits Reynolds would receive as an EMTM student, and, thus, were subsequent remedial measures under Rule 407.  Further, the District Court did not err in holding that Rule 407 barred evidence of the Town Hall meeting and the website revisions as subsequent remedial measures in this breach of contract action.

2.

11

Reynolds also contends that the District Court erred in failing to grant him a new trial after prohibiting impeachment based on the changes to the website during cross-examination of EMTM co-director Katalan. Reynolds contends that he should have been allowed to offer the changes to the website in 2004 to impeach Katalan's testimony. Federal Rule of Evidence 407 provides that "evidence of subsequent measures" may be admitted when offered for "another purpose, such as impeachment."

Impeachment based on subsequent remedial measures is proper "when the defendant opens up the issue." Kenny v. Se. Pa. Transp. Auth., 581 F.2d 351, 356 (3d Cir. 1978). This Court has recognized that "Rule 407's impeachment exception must not be used as subterfuge to prove negligence or culpability of the defendant." Petree v. Victor Fluid Power, Inc., 887 F.2d 34, 39 (3d Cir. 1989). "Under Rule 407, together with the Rule 403 unfair prejudice/probative value weighing, the trial court retains broad power to insure that remedial measures evidence is not improperly admitted under the guise of the impeachment exception." Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 416 (3d Cir. 2002) (footnote omitted).[4] "[A] court must interpret the impeachment exception to Rule 407 circumspectly because 'any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach [a party's] testimony . . . .'" Complaint of Consolidation Coal Co., 123 F.3d 126, 136 (3d Cir. 1997) (quoting Flaminio v. Honda Motor Co., 733 F.2d 463, 468 (7th Cir. 1984)).

---

[4] The District Court in this case also correctly relied on Federal Rule of Evidence 403 to find that the probative value of the impeachment evidence was substantially outweighed by its prejudicial effect. App. 62-63.

The District Court limited cross-examination of Katalan when Reynolds's counsel attempted to create an opportunity for impeachment by asking questions that Katalan could not answer without reference to the clarifications on the website that were taken as subsequent remedial measures, even though the District Court had ruled them inadmissible, in order to elicit an impeachable statement from Katalan. Supp. App. 2293-2301. Penn did not open the issue, Kenny, 581 F.2d at 356, so Reynolds's counsel should not have been allowed to create an impeachment opportunity and then impeach Katalan using the subsequent remedial measures.

* * * * *

We will affirm the District Court's decision to exclude evidence of the website changes and Town Hall meeting as subsequent remedial measures and to prevent Reynolds's counsel from impeaching Katalan based on the changes to the website.

C.

Reynolds contends the District Court erred in granting Penn's motion for judgment as a matter of law on his claim for unjust enrichment following the second trial. We exercise plenary review of the District Court's order granting judgment as a matter of law and apply the same standard applied by the district court. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993). "Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." Id. at 1166. "In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine

13

the credibility of witnesses, or substitute its version of the facts for the jury's version."

Id.

During the second trial, the District Court proposed instructing the jury to return a verdict on the unjust enrichment claim regardless of the verdict on the contract claim in case the jury returned a verdict in favor of Reynolds on the breach of contract claim and that verdict was overturned by the District Court at the post-trial motion stage or on appeal by this Court. The jury found that Penn had not breached its contract with Reynolds, but awarded $66,000 to Reynolds because it found that Penn had been unjustly enriched. The District Court granted Penn's motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) because the relationship between the parties was governed by an express contract. App. 34.[5]

Under Pennsylvania law,[6] "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006). Reynolds contends there was an issue of fact whether there was a contract because there was conflicting evidence presented at trial about certain of its terms. The District Court did not usurp the jury's role when it found that "a reasonable jury would not have a

---

[5] The District Court noted that the jury verdict form did not include a question of whether an enforceable contract had been formed because, until Reynolds's response to Penn's motion for judgment as a matter of law, the parties had not disputed the existence of a contract. Each party told the jury there was a contract in their closing arguments. Reynolds's counsel stated: "I told you at the beginning of the case that this case was simple, that it was a matter of a contract which Mr. Reynolds had with the University of Pennsylvania, that the University of Pennsylvania failed to fulfill, that they had breached." Supp. App. 2475.

[6] The parties agree that Pennsylvania law applies to this case, as do we.

14

legally sufficient evidentiary basis to find for" Reynolds on the unjust enrichment claim, because they could not have found that there was not a contract. Fed. R. Civ. P. 50(a)(1).

Under Pennsylvania law, to decide if a contract is enforceable, it must be determined "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 666 (3d Cir. 1998). The first and third requirements are met. Viewing the evidence in the light most favorable to Penn, there was sufficient evidence for a reasonable jury to find that the parties manifested an intent to be bound: Reynolds applied to the EMTM program, paid tuition and attended classes; Penn accepted Reynolds's application, accepted his tuition payments and educated him in classes. Further, there was sufficient evidence that a reasonable jury could have found that there was consideration: Reynolds paid tuition and Penn accepted that tuition in exchange for educating Reynolds.

Reynolds contends that dispute over the essential terms of the contract means that no contract existed. However, under Pennsylvania law the issue of whether the terms are sufficiently definite to be enforced is a question of law. Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 585 (3d Cir. 2009). Although the parties disputed certain terms of the contract, namely the relationship between the School of Engineering and the Wharton School and the exact meaning of "cosponsor," "student," "alumnus," and "graduate," this ambiguity did not make the contract too indefinite to be enforceable. The parties agreed to the essential terms of the contract: the price, $100,000, Supp. App.

15

1959; the number of course units of instruction Penn would provide in exchange for the tuition paid, Supp. App. 945, 1972; the period during which Reynolds would earn his degree, Supp. App. 945, 1973; the degree he would earn, a master's in engineering, Supp. App. 1957; and that, upon completion of the degree, Reynolds would receive master's degree from the University of Pennsylvania as well as a certificate signed by the deans of both the Wharton School and the School of Engineering, Supp. App. 1957-58, 2207-14. In this case, "[t]he agreement reached between [the parties] covered all the necessary bases — there are no undetermined matters — and the agreement is not impossible to understand." Am. Eagle Outfitters, 584 F.3d at 585. Like the contract at issue in American Eagle Outfitters, the ambiguity in the contract is "the more garden-variety type of ambiguity relating to contractual interpretation." Id. "Disputes over the meaning of a given phrase are common in contract disputes; the presence of such interpretative ambiguity, however, does not go to whether the contract is enforceable, but rather who (the judge or the jury) must decide what the given clause means." Id. at 585-86.

Here, because there was an express enforceable contract, we will affirm the District Court's decision to grant judgment as a matter of law in favor of Penn because Reynolds could not recover on a theory of unjust enrichment. [7]

D.

---

[7] Penn's brief also argues this Court should affirm the District Court on the alternative ground that Reynolds committed fraud on the court by attaching the alleged fraudulent PowerPoint presentation and email to his complaint. Because we affirm the District Court on the grounds discussed above, which are the grounds that the District Court itself rested its decision on, we need not reach Penn's suggested alternative holding.

16

Reynolds's final contention is that the District Court erred in imposing sanctions for Reynolds's failure to admit Penn's request for admission. We review the decision to impose sanctions for discovery violations for abuse of discretion. Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 538 (3d Cir. 2007).

Federal Rule of Civil Procedure 37 provides:

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless: (A) the request was held objectionable under Rule 36(a); (B) the admission sought was of no substantial importance; (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit.

Rule 37 applies to Reynolds's conduct and none of the exceptions to the application of the Rule apply. At trial, Penn proved the requested matter true, that the software was not available to the public until after April 1, 2003. Penn read the Adobe representative's deposition testimony to the jury. App. 82 n. 3. The deposition testimony confirmed that the Adobe software was not publicly available until at least May 2003. App. 477-84. Further, the evidence of the public release date was "substantially important" to Penn's case, because Reynolds alleged in his complaint that the PowerPoint was evidence of the terms of his contract with Penn. If the presentation in his complaint was created with Adobe software not available until 2003, it could not have been the presentation given by Adler that contained the terms of the contract. The evidence was also "substantially important" because it reflected on Reynolds's credibility, which Penn sought to impeach

17

at trial.  Reynolds did not have a reasonable ground to believe he might prevail on the release date of the software at trial.

Because the District Court did not abuse its discretion in awarding attorney's fees and costs incurred to prove the release date of software occasioned by Reynolds's failure to admit Penn's request for admission, we will affirm.

IV.

For the foregoing reasons, we will affirm the orders of the District Court.